969 A.2d 1010

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Louis Peter TANKO, Jr.

### Misc. AG No. 42, Sept. Term, 2006.

Court of Appeals of Maryland.

April 17, 2009.

**406**

Gail D. Kessler, Assistant Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Louis Peter Tanko, Jr., Annapolis, for respondent.

Argued before BELL, C.J.,\*RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, specially assigned), DALE R. CATHELL, and (Retired, specially assigned), JJ.

---

\* Raker, J., now retired, participated in the hearing and conference on this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action against Louis P. Tanko, Jr., the respondent. The petition charged that the respondent violated Maryland Rules of Professional Conduct ("Rule" or "MRPC") 1.1, Competence,[2] 1.5, Fees,[3] 1.6, Confidentiality of Information,[4] 1.15, Safekeeping Property,[5] 3.3, Candor Toward the Tribunal,[6] 8.1, Bar Admis-

---

1. Maryland Rule 16–751, as relevant, provides:
 "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

3. The petitioner, during the hearing, withdrew its claim with regard to Rule 1.5, which, in pertinent part, provides:
 "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly[.]"

4. Rule 1.6, as relevant, provides:
 "(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."

5. Rule 1.15, as relevant, provides:
 "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter....
 "(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607b.
 "(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and

sion and Disciplinary Matters,[7] and 8.4, Misconduct,[8] as adopted by Maryland Rule 16–812, Maryland Rule 16–609, Prohibited Transactions,[9] pertaining to his attorney trust account, and Maryland Code (2004 Repl. Vol., 2006 Supp.) § 10–306, Limitation on Use of Trust Funds,[10] of the Business Occupations and Professions Article.

---

may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred."

**6.** Rule 3.3, as relevant, provides:

"(a) A lawyer shall not knowingly:

"(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"

**7.** Rule 8.1 provides:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

"(a) knowingly make a false statement of material fact; or

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

**8.** Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct [ . . . ];

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice[.]"

**9.** Maryland Rule 16–609 provides:

"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

**10.** Maryland Code (2004 Repl. Vol., 2006 Supp.) § 10–306 provides:

"A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

We referred the case, pursuant to Maryland Rule 16–752(a),[11] to the Honorable Joseph P. Manck of the Circuit Court for Anne Arundel County, for hearing pursuant to Maryland Rule 16–757(c).[12] Following a hearing, the hearing judge made the following findings of fact and conclusions of law.

"[A] letter was sent to the Respondent by Bar Counsel, with an attachment, listing numerous and sundry traffic charges by ticket number and computer print outs of matters in the District Court. (Apparently sent to Bar Counsel by the Office of the States Attorney). In response, Respondent answered by letter stating, 'Indeed, every criminal and traffic charge listed on the attachment to your letter has been resolved either by dismissal or by entry of judgment of acquittal.'

"In fact, there does appear to be two traffic tickets, one involving failure to display or possess a driver's license, and one dealing with failing to carry a registration card that were not resolved as indicated by Respondent. . . . The Court does not find Respondent knowingly made a false statement of material fact or failed to disclose the facts necessary to correct a misapprehension known by the attorney, pursuant to Rule

---

11. Rule 16–752(a) provides:

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

12. Maryland Rule 16–757(c) provides:

"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

8.1, Bar Admission and Disciplinary Matters. The Court does believe Respondent when he suggests he forgot about the ticket for failure to carry a registration card in his vehicle . . . and when he testified he did not receive a ticket for failing to possess or display a driver's license in 2004. From the attachment to Bar Counsel's letter, the Court finds it difficult, if not impossible, to determine the charges or whether, if they are traffic tickets, they had been paid. It is certainly feasible that one would have trouble remembering something as minor as these two tickets. Consequently, the Court does not find Bar Counsel, through clear and convincing evidence, [has] proven those allegations.

"The next allegation . . . concerns the obtaining of a driver's license by Respondent, on or about December 17, 2003, fraudulently, after he knew his license had been confiscated by the police due to an arrest for DWI/DUI.

"Factually, what occurred was Respondent was approached by a police officer on December 13, 2003 at a sobriety checkpoint. As a result of the police officer detecting the odor of burning marijuana coming from the vehicle, Respondent was asked to pull his vehicle over to the side of the road. The Respondent did not obey the order of the police officer, but rather, turned his lights off and drove into a parking lot. The police officer immediately approached the Respondent and had him voluntarily exit the vehicle. The Respondent was given field sobriety tests which included the horizontal gaze nystagmus test. Interestingly enough, the charges emanating from this incident were those dealing with driving under the influence of controlled dangerous substances, not alcohol.

"Regardless, the police officer, who the Court finds extremely credible, properly advised the Respondent of his rights under 16–205.1 of the Maryland vehicle law, commonly referred to as the DR–15 and offered him a breath test. This test was refused by the Respondent. The Court finds the DR–15 was read verbatim to Respondent by the police officer. The police officer also read to Respondent, what is commonly referred to as the DR–15A form, which is the officer's certifi-

cation and order of suspension occasioned by Respondent['s] refusal to take the breath test. Exhibit 9 [the DR–15A Form] also indicates the driver's license of Respondent was confiscated and explains the Respondent was to use this document as his driver's license for the following 45 days. The Respondent refused to sign all of those document[s]. On December 17, 2003, the Respondent appeared at the Motor Vehicle Administration, requesting a duplicate license. Testimony was had by the individual who helped Respondent on that day to the effect that Respondent indicated his driver's license had been lost, hence the request for a duplicate. . . .

"Respondent, in his testimony, indicated that earlier on December 17, 2003, he had been at the mall in Annapolis, at [a] store, and was required to show his license. At that point, he looked in his wallet but could not find his license [sic]. His immediate thoughts on that day were a) he either left his license . . . in a law library, b) he had lost same, or c) the police officer had previously taken it.

"On cross-examination of the MVA individual, it became clear the Respondent said he did not know where his license was when questioned by the MVA personnel. After a very brief conversation with the person at MVA, and since the computer-generated form only allows certain 'drop-downs' on the computer driven form on the screen to explain a missing license, the witness, not the Respondent[,] inserted the word 'lost' into the computer form.

"The Respondent . . . testified [that] he knew in DUI/DWI cases licenses were taken by police officers and mailed back to the MVA. However, his defense is he was not arrested for DUI or DWI, but rather for a marijuana charge. At no time during his arrest, booking and being held for 15 hours was the license taken from him in his presence nor was he asked to surrender same. The police officer could not recall whether Respondent surrendered the driver's license or whether he, the police officer, removed it from the Respondent's wallet sometime after Respondent's wallet, shoestrings, belt, and personal property were taken from him prior to booking.

"On questioning from the Court, the Respondent did recall obtaining a packet of papers from the police officer ... but stated he threw them on his desk and did not review them for approximately one week, well after his visit to the MVA.

"The Court is satisfied with Respondent's explanation concerning his knowledge of the missing license. Had he reviewed the documents, there would have been no need to obtain a duplicate. The Court is further convinced [that] Respondent was not dishonest nor did he engage in fraud, deceit, or misrepresentation, when he advised the MVA employee he did not know what happened to his license. He did not enter 'lost' on the computer screen and the conversation with the MVA employee concerning what became of his license was truly lacking in substance other than Respondent admitting he was unsure of what became of his license.

"The Court ... is satisfied by witnessing the demeanor of the Respondent that he was extremely upset and angry at the stop, arrest, booking and being held for 15 hours to have acted carelessly in his own affairs. Coupling this with his concern about his young daughter being home alone while he was being detained leads the Court to find he did not review the documents given to him by the police officer prior to his visit to the MVA.

"The Court finds, as to the license, that Respondent did not violate the [R]ules of [P]rofessional [C]onduct as the Court finds the evidence to be in equal balance; hence, the Petitioner has not, by clear and convincing evidence, proven misconduct.

"The Complaint by Darryl Q. Short is more problematic. The evidence revealed on May 24, 2005, Mr. Short did retain the Respondent to prepare three separate expungements, two for the District Court and one for the Circuit Court for which he paid a flat fee of $500.00. The evidence reveals Respondent took the $500.00 and placed it in his escrow account, moving it the very next day via electronic transfer into his personal checking account. Bar Counsel suggests Respondent

was not entitled to remove the fee the next day as the legal work had not been completed. The Court finds otherwise.

"The Respondent testified he met with Mr. Short, immediately did research the same day and, in fact, wrote to Mr. Short the same evening[,] sending him the three expungement petitions which he prepared with instructions to Mr. Short on how to file same. He further advised Mr[.] Short he should not file the petitions until his probation terminated, lastly telling him the cost of the filing fee. At that point, on May 24th, the Respondent had done all that was requested and required of him. The Court finds that on May 25, 2005, the fee was earned and the Respondent had the right to transfer it to his personal account[.]"

We now turn our attention to the petitions for expungement filed by the respondent and his alleged violations of Maryland Rules of Professional Conduct 3.3, Candor Toward the Tribunal, and 8.4, Misconduct. **The** expungement petitions [13] filed by the respondent in the District Court for Anne Arundel County were pursuant to two separate cases brought against Mr. Short. In District Court Case # 2A00131168, Mr. Short was given a probation before judgment on a charge of Failure to Comply with a Peace Order. In District Court Case # 6A00128379, Mr. Short was given a probation before judgment on a charge of harassment and had charges of both trespass and telephone misuse nolle prossed.

The hearing judge made the following additional findings of fact and conclusions of law concerning the respondent's filing of the expungement petitions in Mr. Short's case: "Bar Counsel suggests [that] . . . the Respondent [on one of the petitions

---

**13.** The hearing judge also heard testimony concerning the respondent's attempted filing, in the Circuit Court for Anne Arundel County, on three separate occasions, of a petition for expungement of a judgment of probation before judgment for malicious destruction of property. On each occasion, the Circuit Court Clerk's Office refused to accept the petition because the statutory three-year waiting period had not yet passed. The hearing judge did not address the respondent's improper attempt to file the expungement petition in the Circuit Court. Instead, the hearing judge focused on the two petitions for expungement filed in the District Court; it was they that gave rise to this disciplinary matter.

for expungement,] only mentions the nolle prossed trespassing and telephone misuse charges, intentionally omitting the count that resulted in a probation before judgment. Bar Counsel further suggests [that] ... Respondent struck through those portions of the [other] petition for expungement which would have made Mr. Short ineligible for the benefit of expungement of a criminal charge had they not been omitted.

\* \* \*

"The evidence reveals that while researching expungement in Criminal Procedure Art[icle] 10–105, Respondent did not review Criminal Procedure Article 10–107 which discusses and explains what type of cases and/or counts can or cannot be expunged. The Respondent was obviously unaware of *State v. Nelson,* 156 Md.App. 558, 847 A.2d 1184 (2004) ... which discusses how multiple charges that are viewed as a single unit cannot be expunged if any one of the unit, for whatever reason, cannot be expunged ... [T]he trespass and telephone misuse had been nolle prossed and standing alone would have been able to be expunged, however, the third charge, in which Mr. Short received a probation before judgment, made all of those charges ineligible for expungement until three years had passed or until a hearing by the court.

"[T]he Respondent did in fact draw lines through the following words: 'either (a) at least three years have passed since the disposition or' (b) ... 'whichever is later.' According to Respondent, this was done because he believed the forms that are used statewide do not address the issue of all types of expungement; hence, he did what he believed was the correct thing to do. In addition he believed, incorrectly, that if the expungements were denied, a hearing would automatically be set by the court.

"In his letter to Bar Counsel, Respondent admits he was attempting to 'slip by' these documents in the hope the District Court would grant the expungements. Respondent wrote[,] 'After a lengthy discussion with Mr. Short, it was decided that a motion would not be filed in that this would draw the court's attention to the time requirements of subsec-

tion c and likely result in a denial of the expungements. Indeed, it was hoped that the petitions would 'slip through' and be accepted and processed, anyway, despite the fact they were being filed less than three years from disposition. Consequently, I then prepared the three petitions and mailed them directly to Mr. Short as it was his original intent to file them himself.'

"Respondent believed, although negligently and mistakenly, that as to at least [one of the petitions,] the charges could be expunged. He further indicated that as to both [of the petitions,] he believed if the expungement were not allowed the requests would automatically be set for a hearing to determine good cause to grant the relief sought.

"Respondent was aware of the three year waiting period, which he acknowledged in his letter to Bar Counsel, and which is further evidenced by his striking that wording from the petitions he filed. There is no question that ... these actions were misleading to the Court.

"Respondent's actions are a violation of Rule 3.3, Candor Toward the Tribunal and 8.4[ (d) ], Misconduct, [by engaging] in conduct that is prejudicial to the administration of justice, mitigated to some extent by his misunderstanding of the relevant case and statutory law."

Both the petitioner and the respondent filed exceptions pursuant to Maryland Rule 16–758.[14] The petitioner filed an exception to the hearing judge's conclusion that the respondent's obtaining of a duplicate driver's license was not a violation of Rule 8.4. The petitioner also filed a recommendation for sanction, urging the Court to disbar the respondent from the practice of law. The respondent, in turn, filed

---

14. Maryland Rule 16–758 provides, in pertinent part:
 "(b) Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c)."

exceptions to both the hearing judge's findings of fact and conclusions of law.

The petitioner asserts that the hearing judge erred when he concluded that the respondent did not violate subsections (b), (c) and (d) of Rule 8.4, "when he [the respondent] obtained a duplicate driver's license four (4) days after his license was confiscated by the police after he had been stopped at a sobriety check-point; failed field sobriety tests; was arrested and refused to take the breathalyser test." The petitioner argues that the respondent's attempt to claim ignorance of the fact that his driver's license had been confiscated after being arrested at a sobriety check-point only four days earlier is disingenuous because of the respondent's years of experience as an attorney handling DWI/DUI cases. The petitioner contends that the respondent knew that it was standard procedure for an arresting officer to confiscate the license of any individual that refuses a breathalyser test, which was exactly the course of action chosen by the respondent on the night of his arrest. Therefore, the petitioner argues, the respondent obtained a duplicate driver's license by fraud, thereby violating Rule 8.4(b), (c), and (d).

The petitioner recommends that the respondent be disbarred. That recommendation is based on the conduct it believes to be the fraudulent obtaining of a duplicate driver's license and also on the respondent's filing of expungement petitions on behalf of Darryl Q. Short in District Court Case # 2A00131168, conduct which the petitioner characterizes as unethical conduct.

The respondent has filed two exceptions to the determinations made by the hearing judge. The first exception filed by the respondent maintains that the hearing judge, due to the deficiency of Bar Counsel's Petition for Disciplinary or Remedial Action (the "Petition"), was precluded from hearing evidence relating to the expungement petition [15] the respondent

---

**15.** Expungement petitions were filed in the District Court for Anne Arundel County in Case # 6A00128379 and Case # 2A00131168.

filed on behalf of Mr. Short. According to the respondent, the Petition failed to allege that the respondent engaged in professional misconduct relating to his handling of Mr. Short's expungement petition in District Court Case # 2A00131168. The respondent contends that the Petition was not "sufficiently clear and specific" to inform him of the professional misconduct being alleged against him, thus, violating Maryland Rule 16–751(c).[16] The respondent contends that, even if this Court concludes that the Petition did sufficiently allege professional misconduct arising out of his filing of the expungement petition in District Court Case # 2A00131168, he did not violate Rule 3.3 by making any false or misleading statements to the District Court that considered the two expungement petitions he filed on behalf of Mr. Short.

In reviewing the record, we generally will accept the hearing judge's findings of fact, unless those findings are clearly erroneous. *Attorney Grievance Comm'n v. Harris*, 403 Md. 142, 155–56, 939 A.2d 732, 740 (2008); *see also* Maryland Rule 16–759(b)(2).[17] "As to the hearing judge's conclusions of law, such as whether the provisions of the MRPC were violated, our consideration is essentially *de novo*." *Harris*, 403 Md. at 156, 939 A.2d at 740. *See also* Maryland

---

**16.** Maryland Rule 16–751(c) provides:
·"(c) Form of petition. The petition shall be sufficiently clear and specific to inform the respondent of any professional misconduct charged and the basis of any allegation that the respondent is incapacitated and should be placed on inactive status."

**17.** Maryland Rule 16–759(b)(2) provides:
"(b) Review by Court of Appeals.

\* \* \*

"(2) Findings of Fact.
"(A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.
"(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

Rule 16–759(b)(1).[18] If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled. *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 27, 922 A.2d 554, 569 (2007); *Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance Comm'n v. Manger,* 396 Md. 134, 146–47, 913 A.2d 1, 8 (2006). Moreover, a hearing judge's findings of fact will not be overruled unless we determine that those findings are clearly erroneous. *Goff,* 399 Md. at 28, 922 A.2d at 570; *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 265, 920 A.2d 458, 463; *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). The hearing judge is appropriately responsible for, and charged with, " '[w]eighing the credibility of witnesses and resolving any conflict in the evidence[.]' " *Goff,* 399 Md. at 28, 922 A.2d at 570 (*quoting State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998)).

After a review of the record, therefore, we shall overrule the petitioner's exception and both of the respondent's exceptions. We conclude that the hearing judge's findings of fact were not clearly erroneous and his resulting conclusions are supported by those facts.

■ We begin our analysis by addressing the petitioner's exception. The petitioner takes exception to the hearing judge's conclusion that the respondent did not violate Rule 8.4 by obtaining a duplicate driver's license after his DWI/DUI arrest. The hearing judge stated that he was "satisfied by witnessing the demeanor of the Respondent" that the traffic stop and the respondent's subsequent arrest caused him to act "carelessly in his own affairs." Indeed, he observed, the respondent's young daughter was home alone on the night of his arrest, which likely further distracted the respondent from

---

18. Maryland Rule 16–759(b)(1) provides:

"(b) Review by Court of Appeals.

"(1) *Conclusions of Law.* The Court of Appeals shall review de novo the circuit court judge's conclusions of law."

focusing on the information that the arresting officer conveyed to him that night. The hearing judge also found the respondent credible when he testified that he did not review the documents, specifically the DR–15A Form, given to him by the arresting officer until one week after he had obtained a duplicate driver's license from the MVA. The hearing judge likewise was convinced that the respondent was not being dishonest or deceitful when he told the MVA employee that he did not know where his license was. While this Court might not have accepted such an explanation from an experienced attorney such as the respondent, "deference to the hearing judge's findings" is required because he is "in the best position to assess the credibility of a witness." *Attorney Grievance Comm'n v. Pak*, 400 Md. 567, 595, 929 A.2d 546, 562–63 (2007); Maryland Rule 16–759(b)(2)(B). Undoubtedly, the hearing judge had the best opportunity to evaluate the veracity of the respondent's explanation concerning his request for a duplicate driver's license from the MVA. As the hearing judge's factual findings are not clearly erroneous, we overrule the petitioner's exception.

The respondent's first exception is that the hearing judge was precluded from considering any testimony involving the respondent's alleged misconduct that involved his filing of the expungement petition in District Court Case # 2A00131168. The respondent alleges that the Petition failed to include any "allegations of misconduct [by the respondent] concerning Case # 2A00131168." The respondent asserts that this deficiency in the Petition violated Maryland Rule 16–751(c), precluding the hearing judge from considering any evidence of alleged professional misconduct related to the respondent's handling of Mr. Short's expungement petition in District Court Case # 2A00131168.

After reviewing the entire Petition, it is sufficiently clear to us that it alleged that the respondent engaged in professional misconduct in his handling of Mr. Short's expungement petition in District Court Case # 2A00131168. A Petition will be deemed sufficient "[s]o long as the petition

informs the attorney of the misconduct charged in language which is clear and sufficiently specific to enable the attorney to prepare a defense." *Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 247, 760 A.2d 1108, 1115 (2000) (*citing Bar Ass'n v. Cockrell,* 270 Md. 686, 692, 313 A.2d 816, 819 (1974)). We have made it clear that no specific form or detail is required to satisfy this threshold requirement. *Id.* The Petition stated the following, in relevant part:

"16. That on or about May 24, 2005, Darryl Q. Short retained the Respondent [Mr. Louis P. Tanko] to file three (3) expungements and paid a $500.00 flat fee.

"17. That Mr. Short had received a probation before judgment in two separate cases in the District Court for Anne Arundel County and in the Circuit Court for Anne Arundel County.

"18. That Mr. Short's probation before judgment in the District Court matters were entered on June 15, 2005. The probation before judgment in the Circuit Court matter was entered on October 8, 2004 and was terminated early on June 28, 2005.

"19. That when Mr. Short retained the Respondent, the Respondent realized that Mr. Short may not be eligible to file an expungement in his cases until three (3) years after the probation before judgment was entered.

"20. The Respondent admitted to the Attorney Grievance Commission that he decided not to file a Motion for Good Cause to Expunge Mr. Short's Records early because it would draw the Court's attention to the time requirements and likely result in a denial of the expungements. The Respondent stated that he hoped that the Petitions would slip through and be accepted and processed, despite the fact that they were being filed less than three years of [sic] disposition.

"21. In Case Numbers 6A00128379 and 2A00131168 the Respondent filed the Petitions for Expungement of Records in the District Court for Maryland on behalf of Mr. Short

however failed to submit the general waiver and release with those expungements."

Paragraph number twenty-four in the Petition alleges that the respondent admitted to the Commission that the Clerks in Anne Arundel County's Circuit Court, on three separate occasions, refused to accept the expungement petition that the respondent attempted to file on Mr. Short's behalf, because it had not been three years since the entry of probation before judgment in Mr. Short's Circuit Court matter. Thus, the expungement petition for Mr. Short's Circuit Court matter was not filed by the respondent, leaving only two other expungement petitions on behalf of Mr. Short. Both of those expungement petitions were filed in the District Court. The Petition, in paragraphs number twenty and twenty one, makes clear that the Commission was concerned only about the expungement petitions that actually had been "filed" by the respondent on Mr. Short's behalf. If the respondent still was confused about the thrust of the allegations being made by the Commission, paragraph number twenty three, combined with all of the previous allegations in the complaint, should have clarified any ambiguity:

"23. After the releases were submitted to the District Court with the Petitions for Expungement of Records, *both expungements were granted even though three years had not passed since the entry of probation before judgments.*" (Emphasis added).

Indeed, the respondent's own letter to the Commission, the substance of it is summarized in paragraph number twenty, indicates that he understood that the Commission was alleging professional misconduct in his handling of Mr. Short's expungement petition in District Court Case # 2A00131168. The Petition, albeit perhaps not a model of clarity, outlined the fact that the respondent was unsuccessful in filing the one expungement petition that Mr. Short wanted filed in the Circuit Court following his being sentenced to probation before judgment on a malicious destruction of property conviction. In fact, the Petition indicates, and the respondent admitted, that clerks for Anne Arundel County's Circuit Court

refused to allow the respondent to file that particular expungement petition on three separate occasions because three years had not elapsed since the entry of the judgment of probation before judgment. When the Petition is viewed as a whole and a modicum of common sense is applied, the substance of the Petition's allegations is more than clear enough to surpass the minimal hurdle created by Maryland Rule 16–751(c). Therefore, we overrule the respondent's exception and conclude that the hearing judge was correct in taking testimony about the respondent's possible misconduct related to his handling of the expungement petition in District Court Case # 2A00131168.

 The respondent takes exception to the hearing judge's conclusion that he violated Maryland Rule of Professional Conduct 3.3. The respondent contends that there was not enough evidence in the record to support such a finding. We disagree. Rule 3.3 states the following, in relevant part:

"(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

The hearing judge concluded that the respondent violated Rule 3.3(a) by misleading the District Court that reviewed the two expungement petitions filed on behalf of Mr. Short. Based on our review of the facts, the hearing judge's findings and conclusion must be upheld. The respondent, on three

separate occasions, unsuccessfully attempted to file an expungement petition on Mr. Short's behalf in the Circuit Court for Anne Arundel County. On each occasion, clerks for the Circuit Court refused to accept the expungement petition because three years had not yet elapsed since the entry of a judgment of probation before judgment on Mr. Short's malicious destruction count. The respondent, however, nevertheless filed two separate expungement petitions in the District Court, even though those petitions also were ineligible. The hearing judge found that the respondent, while conducting his legal research on this matter, failed to review Maryland Code (2001, 2004 Supp.) § 10–107 of the Criminal Procedure Article which discusses the types of counts that can be expunged. Furthermore, the hearing judge found that the respondent was unaware of *State v. Nelson,* 156 Md.App. 558, 847 A.2d 1184 (2004), which held that multiple charges are viewed as a single unit and cannot be expunged if any charge within that unit, for whatever reason, cannot be expunged. The facts also revealed that the respondent drew lines through the following words on the two expungement forms filed in the District Court: "either (a) at least three years have passed since the disposition or" (b) "whichever is later." The respondent hoped these ineligible petitions would "slip through" and avoid detection by the District Court. We agree with the hearing judge's conclusion that the respondent's actions, taken as a whole, misled the District Court and constituted a violation of Rule 3.3(a). Thus, we shall overrule the respondent's exception.

 The only matter left to determine is the appropriate sanction. The goal of attorney discipline is to protect the public, as opposed to punishing the erring attorney, and to reaffirm the public's confidence in the legal profession. *See Goff,* 399 Md. at 30–31, 922 A.2d at 571; *Mba–Jonas,* 397 Md. at 703, 919 A.2d at 677; *Attorney Grievance Comm'n v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006); *Attorney Grievance Comm'n v. Kreamer,* 387 Md. 503, 534, 876 A.2d 79, 97–98 (2005). When imposing sanctions, our goal is to impose a sanction that is commensurate with the nature and gravity of

the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 483, 671 A.2d 463, 480 (1996); *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994). Certainly, appropriate sanctions serve as a deterrent, *Attorney Grievance Comm'n v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993); *Attorney Grievance Comm'n v. Berger,* 326 Md. 129, 131, 604 A.2d 58 (1992) (*citing Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991)), protect the integrity of the legal profession, *Attorney Grievance Comm'n v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001) and further the public's confidence in it. *Attorney Grievance Comm'n v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004); *Attorney Grievance Comm'n v. Stein,* 373 Md. 531, 533, 819 A.2d 372, 373 (2003); *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). In crafting an appropriate sanction, however, we also must consider the facts and circumstances of each particular case, including any mitigating factors. *See Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998). Given the importance we place on maintaining the public's confidence, "the attorney's prior grievance history . . . the attorney's remorse for the misconduct, and the likelihood of the conduct being repeated" also are relevant considerations. *Attorney Grievance Comm'n v. Post,* 379 Md. 60, 71, 839 A.2d 718, 724–25 (2003). As to the latter consideration, the likelihood of repetition, we have recognized that conduct, although an aberration, can be so egregious as to warrant the imposition of a significant sanction. *See Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 762, 736 A.2d 339, 344 (1999)(offering *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 263, 619 A.2d 100, 105 (1993) as an example of such conduct).

As the hearing judge found, the petitioner filed expungement petitions for charges ineligible for expungement in an attempt to have the petitions "slip by" the court and be

granted. Further, the hearing judge found that the respondent was aware of the three-year waiting period—this was evidenced by his acknowledgment to that effect in a letter to Bar Counsel, as well as by his striking certain wording in the petitions he filed—and that his actions in this regard were misleading to the District Court. While the respondent's actions were indeed misleading and, to a lesser degree, negligent, his actions do not rise to the level necessitating disbarment. *See Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (dishonest—perjurious and fraudulent—conduct ordinarily should result in disbarment). And when we consider, in mitigation, the respondent's lack of any prior disciplinary action and, as stated by the hearing judge, "his misunderstanding of the relevant case and statutory law[,]" the appropriate sanction in this case is a sixty day suspension.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LOUIS PETER TANKO, JR.**