*Attorney Grievance Commission of Maryland v. Vernon Charles Donnelly*, AG No. 53, September Term, 2022. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT**

Respondent, Vernon Charles Donnelly, violated Maryland Attorneys' Rules of Professional Conduct 19-301.4 (Communication), 19-301.8(a) (Conflict of Interest; Current Clients; Specific Rules), 19-303.1 (Meritorious Claims and Contentions), 19-303.3(a) (Candor Toward the Tribunal), 19-308.1(a) (Bar Admission and Disciplinary Matters), and 19-308.4(a)–(d) (Misconduct). These violations stemmed from Respondent entering into a loan agreement with a client without first advising the client, in writing, of the desirability of seeking the advice of independent counsel regarding the transaction; failing to repay the loan on time; continually refusing to fully repay the loan; failing to communicate with the client regarding his proposed change to the loan; misrepresenting the terms of the loan agreement before the Circuit Court for Calvert County, Bar Counsel, and during the disciplinary hearing; and engaging in conduct that is prejudicial to the administration of justice.

Considering the nature of the misconduct, the lack of mitigating factors, and the presence of various aggravating factors, the Supreme Court of Maryland concluded that disbarment is the appropriate sanction.

Circuit Court for Calvert County
Case No. C-04-CV-23-000066
Argued: December 5, 2023

IN THE SUPREME COURT

OF MARYLAND

AG No. 53

September Term, 2022

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

VERNON CHARLES DONNELLY

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: February 27, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Vernon Charles Donnelly ("Respondent") pursuant to Maryland Rule 19-721(a)(1).[1] In accordance with Maryland Rule 19-722(a),[2] we referred the matter to Judge Andrew S. Rappaport of the Circuit Court for Calvert County ("hearing judge").

On August 16, 2023, an evidentiary hearing was held, following which the hearing judge issued findings of fact and conclusions of law. The hearing judge found clear and convincing evidence that Respondent violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-301.4 (Communication), 19-301.8(a) (Conflict of Interest; Current Clients; Specific Rules), 19-303.1 (Meritorious Claims and Contentions), 19-303.3(a) (Candor Toward the Tribunal), 19-308.1(a) (Bar Admission and Disciplinary Matters), and 19-308.4(a)–(d) (Misconduct). Respondent took several exceptions to the hearing judge's findings of fact and conclusions of law.

For the following reasons, disbarment is warranted.

<strong>THE HEARING JUDGE'S FINDINGS OF FACT</strong>

We summarize and, where indicated, quote the hearing judge's findings of fact, which have been established by clear and convincing evidence. We begin with

---

[1] Maryland Rule 19-721(a)(1) states in relevant part: "Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel, on behalf of the Commission, shall file a Petition for Disciplinary or Remedial Action in the Supreme Court."

[2] Maryland Rule 19-722(a) states in relevant part: "Upon the filing of a Petition for Disciplinary or Remedial Action, the Supreme Court may enter an order designating (1) a judge of any circuit court to hear the action, and (2) the clerk responsible for maintaining the record."

Respondent's background and note "Respondent was admitted to the Maryland Bar on May 25, 1982[]" and "[a]t all times relevant to this matter, Respondent maintained an office for the practice of law in Calvert County, Maryland." On February 15, 2018, this Court suspended Respondent from the practice of law for thirty days with the right to apply for reinstatement. *Att'y Grievance Comm'n v. Donnelly*, 458 Md. 237, 182 A.3d 743 (2018). Respondent was reinstated on May 8, 2018.

**Respondent's 2013 Loan From Mr. Kenneth Langley**

In 2011, a legal dispute arose between Mr. Kenneth Langley ("Mr. Langley") and his siblings regarding the administration of their deceased mother's estate. *Langley, et al., v. Langley* ("*Langley v. Langley*"), Case No. 04-C-11-001414. Mr. Langley retained Respondent in the matter and Respondent entered his appearance on April 9, 2012. In September 2012, the circuit court appointed Mark S. Davis as trustee to sell real property retained by the estate and to equally disburse the proceeds between the Langley children. Following the March 2013 sale, Mr. Langley received a disbursement of approximately $50,000. That same month, in an unrelated matter, a judgment was entered against Respondent for $540,793.59.

In April 2013, cognizant his client was going to receive approximately $50,000, Respondent requested Mr. Langley loan him $40,000. "Respondent did not advise Mr. Langley to seek independent counsel, nor did [Respondent] advise [Mr. Langley] of the recent [judgment] entered against him." Respondent drafted a promissory note for the loan,

2

which required monthly interest payments of $167 and repayment by September 30, 2013. On April 5, 2013, Mr. Langley signed the agreement and loaned Respondent $40,000.

"From April 5, 2013, until September 30, 2013, Mr. Langley made repeated requests that Respondent honor the promissory note and make his monthly payments. Despite these entreaties, Respondent claimed he had no money and made no monthly payments on the loan." Respondent failed to meet the September 30, 2013 deadline for repayment. In the ensuing years, Respondent made "sporadic payments" upon the insistence of Mr. Langley. As of 2019, Respondent had repaid $24,000 on the loan, but still owed $16,000 in principal and $8,000 in interest.[3]

### Respondent's Representation of Mr. Langley over "Pier Rights"

In 2012, Respondent initiated litigation on behalf of himself and others who owned property in Solomon's Island, Maryland, against Calvert County and the State regarding contractual rights to develop commercial piers ("Pier Rights" litigation). In 2014, Respondent discussed the case with Mr. Langley and convinced him to purchase commercial pier rights. Following the purchase, on September 16, 2014, Mr. Langley signed a retainer and contingency fee agreement ("2014 retainer") with Respondent for representation in the ongoing suit. The 2014 retainer made no reference to the personal loan between Mr. Langley and Respondent. In April of 2015, Respondent added Mr. Langley as a plaintiff to the Pier Rights litigation. Between 2015 and 2019, Respondent

---

[3] While the promissory note required the loan be repaid six months following the execution, the promissory note provided an annual interest rate of five percent and a five percent late fee on any of the monthly interest payments that were missed.

3

regularly communicated with Mr. Langley regarding the Pier Rights litigation, but did not indicate the 2014 retainer modified or affected the 2013 loan, or that Mr. Langley would owe money in the litigation prior to success in the suit. In February of 2019, Respondent contacted Mr. Langley concerning his proportionate costs of the litigation. "Ostensibly referring to Respondent's outstanding debt to Mr. Langley, Respondent stated[:] 'Therefore, I am not about to go borrow money to in effect refund [] your costs. I encourage you to get off the horse named stupid and [let's] work together to solve your immediate needs.'"

## Bar Counsel's Investigation

In April 2019, Mr. Langley demanded full repayment via notarized letter, but Respondent did not repay the balance of the loan. Following this, Mr. Langley filed a complaint against Respondent with Petitioner. Upon receipt of the complaint, Petitioner notified Respondent that a complaint had been filed against him. In a May 2019 written response to Bar Counsel, Respondent asserted the following:

> On or about April 1, 2013, [Mr. Langley] came into my office with no appointment carrying a bag with $40,000 in cash apparently from his share of the proceeds from the sale of his mother's house, which was sold by a Trustee, Mark S. Davis, Esquire, pursuant to Court Order. He announced that he wanted me to keep it as safekeeping for him. I suggested he put it in a bank. He said he didn't trust banks. I suggested he keep it at his place. He ventured that he was moving to a new location, the Locust Inn, Solomons, Maryland and it was not a secure place. He wanted me to put it in my office safe and he really did not need a note.
>
> ***
>
> When the Promissory Note matured in September 2013, [Mr. Langley] and I agreed orally to an extension of the Note and at one point I encouraged him

4

to begin withdrawing principal amounts for the loan which he did beginning on January 14, 2014. He would call and request a sum of money and I would give it to him. By September 2014, he had requested and received $9,000.00.

In November 2019, Bar Counsel took Respondent's statement under oath.[4] Respondent testified:

> [Mr. Langley] walked in the office with a bag of money . . . . But he wanted to give the money to me. And he wanted to give it to me because I had always been good to his family, is what he said. I told him I couldn't do that.
>
> ***
>
> I know [Mr. Langley] was -- [Mr. Langley] was primarily interested in my holding the money after we got through the initial stage, holding it for him.
>
> ***
>
> So, I took it. I think, given the date of the note, I believe it is -- and I'm just talking straight out here. I'm not saying I know exactly the moment. But as I recall, [the note] was something for him to take home and think about whether or not he wanted to invest it or leave it with me or find use or whatever.
>
> ***
>
> I mean, it's basically a standard, if there's such a thing, of a promissory note. Sets the amount. Sets the date. Sets the terms. Kept very short for six months for reason. That's all that I saw was an opportunity for him. He wanted me to invest it in what we call a commercial pier project that was around. He wanted to be a part of the commercial pier project.
>
> We had talked about all this before this happened, months or two months before. And I think it sets forth the fact that it is a confessed judgment note, acknowledges it's for a business investment[.]

---

[4] Maryland Rule 19-712(a) allows Petitioner to authorize Bar Counsel to issue a subpoena compelling a person to give testimony on a disciplinary matter. Maryland Rule 19-712(d) requires "[a]ll testimony by the subpoenaed witness [] be under oath" and "contemporaneously recorded[.]"

The hearing judge found Respondent's "version of facts in his statement under oath differed from the version of facts he provided" in his prior written response.

## Mr. Langley's Suit Against Respondent

On January 13, 2020, Mr. Langley filed suit in the Circuit Court for Calvert County. *Langley v. Donnelly*, Case No. C-04-CV-20-000060. This suit prompted Bar Counsel to place the investigation of Respondent on their deferred docket.[5] At trial in April 2021, Respondent testified, under oath, to the following:

> [Mr. Langley] walks into the office carrying a bag of money and wants me to take the bag of money. And we joked about it afterwards, he wanted to give it to me.
>
> ***
>
> What happened [were] no requests for any money, no requests for any interest. When we came together at that September period of time to talk about it, my recollection is that [Mr. Langley] said something to the equivalent -- it wouldn't have been this, but -- let it ride. And I said, no, you've got to start getting this money out of here. And that's why all of a sudden the payments began in January of 2014.
>
> Now, with that said I'm worried about my safe being broken into, because I don't know who I'm dealing with and what I'm dealing with. He was to get it out of there, because I told him I couldn't find any investments.
>
> He didn't want to get it out of there. So we just -- I said, well, start taking the money out. And you'll notice the list of payments that are made all begin in January 2014 and they move right along.

---

[5] Maryland Rule 19-711(b)(5) allows Bar Counsel, with the permission of Petitioner, to defer action on a complaint where "a civil or criminal action involving material allegations against the attorney substantially similar or related to those alleged in the complaint is pending in any court of record in the United States[.]"

The hearing judge found these statements were knowingly false as Respondent was shown checks he provided to Mr. Langley reflecting they were for a "loan" or for "loan repayment." He also found Respondent contradicted his previous testimony: "The note -- the note was modified in that September -- in that meeting that we had in 2014, in my office, and it was modified in terms of we're not going to be paying interest, too." The hearing judge further noted that Mr. Langley contradicted Respondent and found Mr. Langley more credible.

At the conclusion of *Langley v. Donnelly*, the circuit court ruled against Respondent.

> The Circuit Court for Calvert County entered judgment against Respondent and in favor of Mr. Langley for $25,081.68. Additionally, the Court ordered Respondent to pay attorney's fees in the amount of $11,572.00 within thirty (30) days. Respondent failed to pay the attorney's fees as ordered, which precipitated [Mr. Langley's attorney] filing a motion to reduce the award to a judgment on May 20, 2021.

Approximately six months later, Respondent paid in full the judgments entered against him in favor of Mr. Langley.

**Procedural History**

Following the conclusion of *Langley v. Donnelly*, Bar Counsel resumed their investigation of Respondent. On August 29, 2022, Petitioner directed Bar Counsel to file a Petition for Disciplinary or Remedial Action against Respondent ("Petition"). The Petition was filed with this Court on January 27, 2023. On April 21, 2023, following our transmission of the matter to the circuit court, Respondent was served with process informing him of the Petition. On May 5, 2023, Respondent filed a *pro se* answer to the

7

Petition and a motion to dismiss. Respondent asserted he "did not represent Mr. Langley in March 2013." Respondent further asserted:

> On April 1, 2013, Mr. Langley appeared in [my] office without an appointment, carrying a bag with $40,000 in cash. He explained that this was his share of the proceeds from the Partition Sale of his deceased mother's home sold by a court appointed trustee, Mark S. Davis, Esquire. The statement in his complaint that I demanded his "inheritance" money is simply untrue. There was no demand for payment by me of $40,000 or any other amount.
>
> During our April 1, 2013, discussion, Mr. Langley wanted to know if there was an opportunity to invest in the Commercial Pier Litigation by perhaps buying into a contract right. . . . He asked me to hold the money for an investment in the pier right litigation and I drafted the Promissory Note. I signed it several days later on April 5, 2013. The handwriting at the bottom of the Note confirms that it was "cash" and it was signed by me individually.
>
> ***
>
> [I] had no obligation to inform [Mr. Langley] of the March 11, 2013, judgment entered against [me], nor to tell him to seek other counsel. Mr. Langley was insistent on investing the money in the pier right litigation and I sent him away to return later so we could talk further about it and available opportunities, if any.

On May 22, 2023, the hearing judge denied Respondent's motion to dismiss. An evidentiary hearing in this matter was held on August 26, 2023.

## CONCLUSIONS OF LAW

The hearing judge concluded that there was clear and convincing evidence that Respondent violated MARPC 19-301.4, 19-301.8(a), 19-303.1, 19-303.3(a), 19-308.1(a),

8

and 19-308.4(a)–(d).[6]  Petitioner filed no exceptions.  Respondent filed several exceptions which we address *infra*.

## STANDARD OF REVIEW

"[T]his Court has original and complete jurisdiction and conducts an independent review of the record." *Att'y Grievance Comm'n v. O'Neill*, 477 Md. 632, 658, 271 A.3d 792, 807 (2022) (quotation marks and citation omitted).  "In an attorney disciplinary proceeding, this Court reviews for clear error a hearing judge's findings of fact and reviews without deference a hearing judge's conclusions of law."  *Att'y Grievance Comm'n v. Cassilly*, 476 Md. 309, 339–40, 262 A.3d 272, 289 (2021).  "This Court shall not disturb the hearing judge's findings where there is any competent evidence to support the finding of fact."  *O'Neill*, 477 Md. at 658, 271 A.3d at 808 (quotation marks and citation omitted).

Where, as here, a respondent files exceptions, Maryland Rule 19-740(b)(2)(B) requires that:

> the Supreme Court shall determine whether the findings of fact have been proved by the requisite standard of proof set out in [Maryland] Rule 19-727(c).  The Court may confine its review to the findings of fact challenged by the exceptions.  The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

Maryland Rule 19-727(c) reads: "Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence.  If the attorney asserts . . . a matter of

---

[6] The hearing judge indicated that he "made findings of fact and conclusions of law as to each charge[.]"  However, the Petition charged twelve MARPC violations of which the hearing judge only addresses six.  Given that Petitioner did not take exception to the hearing judge's conclusions, we will proceed without discussion of those charges.

mitigation or extenuation, the attorney has the burden of proving the defense or matter by a preponderance of the evidence." "If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Att'y Grievance Comm'n v. Tanko*, 408 Md. 404, 419, 969 A.2d 1010, 1019 (2009).

## DISCUSSION

## RESPONDENT'S EXCEPTIONS

### *Exception One: Respondent's Lack of Representation*

Respondent argues that the hearing judge erred in requiring him to proceed while unrepresented by counsel. Respondent argues the four months following the scheduling of the hearing was insufficient to secure counsel. The hearing judge found that Respondent was given sufficient notice and participated substantially *pro se* in the disciplinary matter. During the August 2023 hearing, the hearing judge stated:

> Obviously, Mr. Donnelly, you are barred in the State of Maryland. You are a lawyer, but there has been no mention of any continuance request throughout the entire proceedings, and there was nothing filed prior to today, other than this morning as we called the case, and you're requesting a continuance.

In *Att'y Grievance Comm'n v. Stewart*, we held "a lawyer is entitled to the basic elements of due process[,] notice[,] and the opportunity to defend in a full and fair hearing." 285 Md. 251, 259, 401 A.2d 1026, 1030 (1979). Following Mr. Langley's complaint, Respondent was given notice and frequently kept apprised of the status of the investigation.

10

Respondent received his due process in this disciplinary proceeding and, therefore, we overrule this exception.

*Exception Two: The Hearing Judge Did Not Consider Respondent's Pleadings*

Respondent argues that the hearing judge did not "properly evaluate the truth of the precise facts in issue in considering the representations and admissions in the pleadings in this matter[.]" "[A]s far as what evidence a hearing judge must rely upon to reach his or her conclusions, we have said that the hearing judge may pick and choose what evidence to believe." *Att'y Grievance Comm'n v. Kalarestaghi*, 483 Md. 180, 220 n.7, 291 A.3d 728, 751 n.7 (2023) (quotation marks and citation omitted). The hearing judge is not required to cite Respondent's pleadings with more frequency or accord them more weight. *See id.*, 291 A.3d at 751 n.7. The hearing judge reviewed Respondent's pleadings and the evidence presented, including Respondent's testimony, and did not find Respondent credible. We defer to the hearing judge's assessment and, therefore, overrule Respondent's exception.

*Exception Three: The Creation of the Loan Agreement*

First, Respondent argues he did not solicit the loan and that Mr. Langley made the loan freely. Mr. Langley testified that "Mr. Donnelly asked if he could borrow $40,000[,]" and the hearing judge found Mr. Langley credible. We defer to the hearing judge's credibility determination. *Id.*, 291 A.3d at 751 n.7. Further, whether Mr. Langley entered into the loan willingly is not disputed and has no bearing on Respondent's choice not to repay the loan. Thus, we overrule this first portion of Respondent's exception.

11

Second, Respondent contends there was no clear and convincing evidence that he and Mr. Langley were in an attorney-client relationship when they executed the loan. Respondent argues his representation of Mr. Langley ended following *Langley v. Langley*, and filings from the case were not clear and convincing evidence of any representation afterwards. "[T]he hearing judge may pick and choose what evidence to believe[,]" and "we defer to the hearing judge's assessment of the witnesses' credibility." *Id.*, 291 A.3d at 751 n.7 (quotation marks and citations omitted). Mr. Langley testified that Respondent was his attorney at the execution of the loan, and Bar Counsel was able to demonstrate the relationship via Respondent's signature on pertinent filings from *Langley v. Langley*. The hearing judge credited Mr. Langley's testimony and the evidence presented by Petitioner. We defer to that finding and, therefore, we overrule this second portion of Respondent's exception.

Third, Respondent argues the hearing judge erred in finding that he did not inform Mr. Langley of the reason for the loan. The hearing judge found "that just weeks prior to receiving this cash, the Respondent received a judgment against him in the amount of $540,793.59[,]" and that "Respondent testified his portion of the judgment was reduced to less than Fifty Thousand dollars ($50,000.00)." We will "not disturb the hearing judge's findings where there is *any competent evidence* to support the finding of fact." *O'Neill*, 477 Md. at 658, 271 A.3d at 808 (quotation marks and citation omitted) (emphasis added). Given that there was competent evidence presented to infer the reason for the loan was to satisfy Respondent's judgment, the hearing judge had clear and convincing evidence to

12

find that Respondent did not advise Mr. Langley of the reason for the loan. Accordingly, we overrule this third portion of Respondent's exception.

Fourth, Respondent argues the hearing judge did not have clear and convincing evidence that he failed to advise Mr. Langley to seek independent counsel. MARPC 19-301.8(a) requires advice to seek independent counsel be given in writing. Respondent concedes "[t]here is no evidence showing there was written advice by Respondent informing Mr. Langley he should seek independent legal advice before he made the loan to Respondent." Thus, we overrule this fourth portion of Respondent's exception.

Fifth, Respondent unequivocally denies that Mr. Langley made repeated demands for repayment. Mr. Langley testified, during *Langley v. Donnelly* and before the hearing judge, about his repeated requests for repayment. The hearing judge possessed clear and convincing evidence Mr. Langley made repeated demands for repayment. Assuming, *arguendo*, Mr. Langley had not made repeated requests, this failure would not have excused Respondent's choice not to repay the loan. Accordingly, we overrule this fifth portion of the exception and overrule the third exception in its entirety.

### *Exception Four: Respondent's Testimony on the Loan*

Next, Respondent takes exception to the finding that his testimony in *Langley v. Donnelly* was false. "This Court shall not disturb the hearing judge's findings where there is any competent evidence to support the finding of fact." *O'Neill*, 477 Md. at 658, 271 A.3d at 808 (quotation marks and citation omitted). "[T]he hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe and,

13

as we have said, to pick and choose which evidence to rely upon." *Kalarestaghi*, 483 Md. at 220 n.7, 291 A.3d at 751 n.7 (quotation marks and citations omitted). Respondent provides four arguments for this exception.

First, Respondent asserts the hearing judge was not allowed to find that Respondent's testimony in *Langley v. Donnelly* was false absent a specific finding from the presiding judge. Respondent contends "[t]here was no specific transcript of the trial of [*Langley v. Donnelly*,] nor a specific finding by the other judge that such a statement was knowingly falsely made[.]" The transcript of *Langley v. Donnelly* provided to the hearing judge reflects the following testimony by Respondent: "I did not ask [Mr. Langley] for a business loan. I did not ask him for any money. He showed up in the office with a bag with money in it." This statement denied the existence of the loan and provided the hearing judge with clear and convincing evidence that Respondent testified falsely. Thus, we overrule this part of Respondent's exception.

Second, Respondent asserts:

In light of Mr. Langley's prior inconsistent statements about whether Respondent told him at the time the loan was made it would be used for expert witness fees or didn't tell him what the use of the loan would be at the time it was made, Mr. Langley's statement that Respondent solicited or asked for a loan is not clear and convincing evidence Respondent did in fact solicit or ask for the loan.

We previously overruled Respondent's exception that he did not solicit the loan, noting we defer to the hearing judge's finding that Mr. Langley was credible. Accordingly, we overrule this part of Respondent's exception.

14

Third, Respondent asserts whether he provided false testimony to the circuit court is moot because of his repayment following *Langley v. Donnelly*. "A case is moot if there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Powell v. Md. Dep't of Health*, 455 Md. 520, 539, 168 A.3d 857, 868–69 (2017) (quotation marks and citation omitted). Presently, the "dispute" concerns Respondent's alleged MARPC violations, not the loan obligation itself. This Court acts in attorney discipline matters to "protect members of the public from attorneys who have demonstrated that they are unfit for the practice of law[,]" not merely to rectify the specific harm suffered by an attorney's client. *Att'y Grievance Comm'n v. Keating*, 471 Md. 614, 651, 243 A.3d 520, 543 (2020). Respondent's repayment does not render the issue moot, and we therefore overrule this portion of Respondent's exception.

Finally, Respondent argues his testimony on the modification of the loan is evidence that he understood the agreement with Mr. Langley to be a loan. Indeed, Respondent testified the loan was modified by the 2014 retainer, acknowledging he understood his agreement with Mr. Langley to be a loan. Respondent also testified as if the loan was not a loan. Accepting that Respondent understood the agreement was a loan does not lead this Court to override the hearing judge's finding. In fact, quite the opposite. We note that this exception highlights clear and convincing evidence of Respondent's choice to repeatedly mischaracterize the loan in order to justify not repaying it. Accordingly, we overrule this portion of the exception and the entirety of Respondent's fourth exception.

15

## *Exceptions Five, Six, and Seven*

Respondent's fifth and sixth exceptions focus on the hearing judge having found an absence of mitigating factors and several aggravating factors. His seventh exception disputes the hearing judge's conclusions of law, except for one. We address these *infra*.

## RESPONDENT'S MARPC VIOLATIONS

We begin with the hearing judge's conclusions of law, which this Court reviews without deference. *Cassilly*, 476 Md. at 339–40, 262 A.3d at 289. "If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Tanko*, 408 Md. at 419, 969 A.2d at 1019. The hearing judge concluded that Respondent violated MARPC 19-301.4 (Communication), 19-301.8(a) (Conflict of Interest; Current Clients; Specific Rules), 19-303.1 (Meritorious Claims and Contentions), 19-303.3(a) (Candor Toward the Tribunal), 19-308.1(a) (Bar Admission and Disciplinary Matters), and 19-308.4(a)–(d) (Misconduct). For the following reasons, we agree with the conclusions reached by the hearing judge.

## MARPC 19-301.4 (Communication)

MARPC 19-301.4 reads in full:

(a) An attorney shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0(g) (1.0), is required by these Rules;

> (2) keep the client reasonably informed about the status of the matter;

16

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MARPC 19-301.0(g) defines informed consent as "the agreement by a person to a proposed course of conduct after the attorney has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."

In concluding Respondent violated MARPC 19-301.4, the hearing judge wrote:

Hav[ing] no reference to, or incorporation of, the 2013 loan agreement in the 2014 attorney client agreement pertaining to the loaned funds being used for litigation costs lends itself to the more plausible explanation that the Respondent failed to obtain Mr. Langley's informed consent and unilaterally modified the 2013 loan agreement.

In effect, the hearing judge found Respondent unsuccessfully asserted a retroactive change to both the promissory note and the 2014 retainer without informing Mr. Langley.

Respondent takes exception and asserts he did not unilaterally modify the promissory note by interpreting his remaining loan balance to be offset by Mr. Langley's attributable costs for the Pier Rights litigation. "If the hearing judge's factual findings are not *clearly erroneous* and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Tanko*, 408 Md. at 419, 969

17

A.2d at 1019 (emphasis added). While *Langley v. Donnelly* shows Respondent was unsuccessful in his attempt to bind the loan to the 2014 retainer, the February 2019 letter from Respondent to Mr. Langley shows Respondent attempted to unilaterally enforce the modification. The hearing judge had clear and convincing evidence Respondent had attempted to treat the agreement as modified and failed to inform Mr. Langley of this change and we overrule Respondent's exception.

MARPC 19-301.4(a)(1) requires an attorney to communicate with their client regarding any "circumstance with respect to which the client's informed consent . . . is required." MARPC 19-301.8(a)(3) requires "the client give[] informed consent, in a writing signed by the client, to the essential terms of the transaction and the attorney's role in the transaction," when an attorney seeks to enter a business transaction with a client. Under these rules, when Respondent pursued a loan agreement with Mr. Langley, he was required to receive Mr. Langley's informed consent and then "promptly inform" Mr. Langley "of any decision or circumstance" regarding that agreement. MARPC 19-301.4(a)(1).

The record does not reflect Respondent communicated with Mr. Langley regarding a proposed modification to the 2013 promissory note. In fact, many of the communications from Respondent regarding the Pier Rights litigation expressly stated Mr. Langley would not owe anything unless they prevailed in the suit. These communications failed to "promptly inform the client of any decision or circumstance with respect to which the

18

client's informed consent[]" was required.  MARPC 19-301.4(a)(1).  Accordingly, we agree with the hearing judge that Respondent violated MARPC 19-301.4.

**MARPC 19-301.8 (Conflict of Interest; Current Clients; Specific Rules)**

MARPC 19-301.8(a) reads in relevant part, "[a]n attorney shall not enter into a business transaction with a client unless: . . . (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek independent legal advice on the transaction[.]"  The hearing judge concluded Respondent violated MARPC 19-301.8 when he entered into the loan agreement with Mr. Langley without first advising Mr. Langley to consult with independent counsel.  The hearing judge found there was an attorney-client relationship between Mr. Langley and Respondent at the execution of the 2013 loan, and both Mr. Langley and Respondent agreed Respondent failed to provide advice to seek independent counsel.

Respondent takes exception and argues that he committed a "technical violation of this Rule[]" in failing to provide written advice to Mr. Langley.  The provision of written advice is an essential element to MARPC 19-301.8.  *See Att'y Grievance Comm'n v. Shapiro*, 441 Md. 367, 391, 108 A.3d 394, 408 (2015) ("Respondent violated clearly [MARPC 19-301.8](a)(2) by not providing [the client] with an appropriate written disclosure.").  We noted *supra* Respondent's admission that he did not provide Mr. Langley with written advice.  Given this admission, we overrule Respondent's exception, and agree with the conclusion of the hearing judge that Respondent violated MARPC 19-301.8(a).

**MARPC 19-303.1 (Meritorious Claims and Contentions)**

MARPC 19-303.1 reads in part, "[a]n attorney shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous[.]" The hearing judge concluded that Respondent "violated [MARPC 19-303.1] by creating [the] fictitious defense in" *Langley v. Donnelly* that the loan agreement had been modified. The hearing judge found Respondent's credibility on this claim was eroded when confronted with his repayment of the loan following its purported modification.

Respondent takes exception, asserting he "had a right to contend he should have such offset right." We overruled Respondent's prior exception on this issue and overrule it here as well. *See Tanko*, 408 Md. at 419, 969 A.2d at 1019 ("If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled.").

MARPC 19-303.1 restrains attorneys from using court processes and procedures abusively and frivolously. *See, e.g.*, *Att'y Grievance Comm'n v. Mixter*, 441 Md. 416, 511, 109 A.3d 1, 59 (2015) ("[Respondent] violated [MARPC 19-303.1], by continuing to pursue . . . litigation after it became clear that there was no good faith basis for doing so."); *Att'y Grievance Comm'n v. Sloane*, 483 Md 131, 157, 290 A.3d 1026, 1041 (2023) (sustaining a MARPC 19-303.1 violation because "[t]here was no legal basis for [r]espondent to raise the issue of Ms. Deneroff's driving record and diary after Judge Callahan ruled on the matter"). We agree that Respondent violated MARPC 19-303.1 by

20

inventing fictitious defenses in *Langley v. Donnelly* to avoid repaying Mr. Langley and repeating them before the hearing judge.

## MARPC 19-303.3 (Candor Toward the Tribunal)

MARPC 19-303.3(a)(1) reads in pertinent part "[a]n attorney shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney[.]" The hearing judge concluded Respondent violated MARPC 19-303.3(a) "for the reasons stated in reference to [MARPC 19-301.4, 19-301.8, and 19-303.1]." Respondent takes exception to this conclusion, arguing he made no false statements of material fact and "simply described the facts as he remembered them[.]" As discussed, the hearing judge credited Mr. Langley's testimony on the loan agreement, and we will not disturb the hearing judge's finding absent clear error. *Kalarestaghi*, 483 Md. at 220 n.7, 291 A.3d at 751 n.7; *Tanko*, 408 Md. at 419, 969 A.2d at 1019. Accordingly, we overrule Respondent's exception.

MARPC 19-303.3 "sets forth special duties of attorneys as officers of the court to avoid conduct that undermines the integrity of the adjudicative process." MARPC 19-303.3 cmt. 2. "[MARPC 19-303.3](a)(1) requires that a lawyer not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." *Mixter*, 441 Md. at 514, 109 A.3d at 60–61 (quotation marks omitted). As we concluded that the hearing judge had clear and convincing evidence that Respondent testified falsely before the tribunal, we agree Respondent violated MARPC 19-303.3(a).

21

**MARPC 19-308.1 (Bar Admission and Disciplinary Matters)**

MARPC 19-308.1(a) reads in pertinent part, "an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact[.]" The hearing judge concluded Respondent violated MARPC 19-308.1(a) by making false statements throughout the disciplinary process. Respondent did not take exception to this conclusion.

"The practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession." *Att'y Grievance Comm'n v. Butler*, 441 Md. 352, 360, 107 A.3d 1220, 1225 (2015) (quotation marks and citation omitted). We have held an attorney violates MARPC 19-308.1(a) where they "act[] dishonestly and deceitfully by knowingly making false statements to Bar Counsel." *Att'y Grievance Comm'n v. Harris*, 403 Md. 142, 164, 939 A.2d 732, 745 (2008). In rendering false statements both orally and in writing under oath before Bar Counsel and the hearing judge, Respondent violated MARPC 19-308.1(a). Accordingly, we agree with the hearing judge's conclusion.

**MARPC 19-308.4 (Misconduct)**

MARPC 19-308.4(a)–(d) reads:

It is professional misconduct for an attorney to:

(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

(d) engage in conduct that is prejudicial to the administration of justice[.]

The hearing judge found that Respondent violated MARPC 19-308.4(a), (b), (c), and (d). First, as the hearing judge concluded Respondent violated other sections of the MARPC, he concluded Respondent violated MARPC 19-308.4(a). Second, the hearing judge concluded that, while Respondent had not been charged, Respondent's false testimony during *Langley v. Donnelly* amounted to perjury under Md. Code Ann., Criminal Law ("Crim. Law") § 9-101[7] and violated MARPC 19-308.4(b). Third, the hearing judge found clear and convincing evidence Respondent violated MARPC 19-308.4(c) when he made repeated false statements to Bar Counsel and the circuit court. Fourth, the hearing judge found clear and convincing evidence that Respondent violated MARPC 19-308.4(d) by pursuing the $40,000 loan while still representing Mr. Langley, failing to advise Mr. Langley to seek independent counsel, and by making false statements to the circuit court that he and Mr. Langley modified the 2013 loan agreement.

Respondent takes exception to each of these and reasserts his prior exceptions discussed *supra*. Further, Respondent asserts he committed no misconduct and did not

---

[7] Crim. Law § 9-101(a)(1) reads, "[a] person may not willfully and falsely make an oath or affirmation as to a material fact: (1) if the false swearing is perjury at common law[.]"

violate MARPC 19-308.4. As discussed *supra*, we overruled each of these exceptions and also overrule them here. *See O'Neill*, 477 Md. at 658, 271 A.3d at 808.

First, "we have held that [where the] respondent has violated several Rules of Professional Conduct, [they] necessarily violated [MARPC 19-308.4](a) as well[.]" *Att'y Grievance Comm'n v. Gallagher*, 371 Md. 673, 710–11, 810 A.2d 996, 1018 (2002). Since we agree with the hearing judge's conclusion that Respondent committed other MARPC violations, we also agree that Respondent violated MARPC 19-308.4(a).

Turning to MARPC 19-308.4(b), for an example we look to *Att'y Grievance Comm'n v. Bonner*, 477 Md. 576, 271 A.3d 249 (2022). In *Bonner*, we agreed with the hearing judge the respondent violated MARPC 19-308.4(b) where the attorney "intentionally misappropriated more than $14,000 from [a firm] in about 35 separate transactions[,]" which "amount[ed] to theft *despite the absence of criminal charges*[.]" *Id.* at 595, 271 A.3d at 261 (emphasis added and footnote omitted). Here, Respondent repeatedly made knowingly false statements which could be charged under Crim. Law § 9-101(a)(1) as perjury. Despite the absence of charges, this conduct violates MARPC 19-308.4(b). Accordingly, we agree with the hearing judge's conclusion.

On MARPC 19-308.4(c), "we note the significant overlap between [MARPC 19-303.3(a)] and [MARPC 19-308.4(c)], recognizing that a violation of the former generally entails a violation of the latter." *Att'y Grievance Comm'n v. White*, 480 Md. 319, 381, 280 A.3d 722, 758 (2022). Additionally, "[w]e have said that [MARPC 19-308.1(a)] and [MARPC 19-308.4(c)] are violated when an attorney acts dishonestly and deceitfully by

24

knowingly making false statements to Bar Counsel." *Harris*, 403 Md. at 164, 939 A.2d at 745 (citation omitted). As we agreed with the hearing judge's conclusion that Respondent violated MARPC 19-303.3(c) and 19-308.1(a), we agree Respondent violated MARPC 19-308.4(c).

Finally,

> MARPC 19-308.4(d) prohibits conduct that is prejudicial to the administration of justice. Conduct is prejudicial to the administration of justice when it reflects negatively on the legal profession and sets a bad example for the public at large or is likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court[.]

*White*, 480 Md. at 382, 280 A.3d at 758 (cleaned up). In *White*, the respondent violated MARPC 19-308.4(d) when he "failed to adequately communicate with his clients [and] made knowing and intentional misrepresentations to various courts to cover up his misconduct[.]" *Id.*, 280 A.3d at 758–59. Certainly, Respondent's failure to communicate a proposed modification of the loan to Mr. Langley and his repeated false statements before the circuit court in *Langley v. Donnelly* "set[] a bad example for the public at large[.]" *Id.* at 382, 280 A.3d at 758. Repeating false statements in order to gain a personal windfall "impair[s] public confidence in the profession[.]" *Id.*, 280 A.3d at 758. We agree with the hearing judge's conclusion that Respondent violated MARPC 19-308.4(d).

## MITIGATING AND AGGRAVATING FACTORS

"During an attorney grievance matter, the circuit court may consider the existence of aggravating and mitigating factors." *O'Neill*, 477 Md. at 656, 271 A.3d at 806. The

25

hearing judge found that Respondent failed to establish any mitigating factor and noted several aggravating factors.

## Mitigating Factors

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the [MARPC]; and (14) unlikelihood of repetition of the misconduct.

*Cassilly*, 476 Md. at 403, 262 A.3d at 327. Respondent bears the burden of proving mitigating factors "by a preponderance of the evidence." Md. Rule 19-727(c).

The hearing judge found no mitigating factors. Respondent asserts eight mitigating factors apply: (1) the delay in the grievance proceedings; (2) the absence of a selfish motive; (3) full and free disclosure to Petitioner; (4) his "apparent" mental disability; (5) his "timely" repayment of the loan balance after Mr. Langley's suit; (6) the lack of harm to Mr. Langley; (7) the absence of prior "major" discipline; and (8) the unlikelihood of repeated misconduct. We address each in turn and conclude that Respondent has failed to establish any mitigating factor by a preponderance of the evidence.

26

## *Prejudicial Delay*

First, Respondent asserts there was prejudicial delay in the disciplinary process.[8] Respondent contends there was delay through the initiation of the grievance process "more than six (6) years after execution of the April 1, 2013 Promissory Note." Respondent further contends there was an additional three-year delay during the pendency of *Langley v. Donnelly*.

In *Att'y Grievance Comm'n v. Jackson*, 477 Md. 174, 219, 269 A.3d 252, 279 (2022), this Court decided not to sanction an attorney who was "prejudiced in having to explain her signature on two lines many years after they were filed[.]" *Jackson* identified that the length of time Bar Counsel waits to initiate the attorney grievance process may become prejudicial when that time has the tendency to have weakened witnesses' and the respondent attorney's memories of the events. *Id.*, 269 A.3d at 278–79. Here, assuming, *arguendo*, Respondent's asserted nine-year delay correctly includes the time Mr. Langley did not file his grievance, Respondent was not similarly prejudiced. The loan agreement

---

[8] Respondent's argument mirrors a defense of laches. In *Cassilly*, we reiterated our

> doubt about the applicability of the laches defense in attorney grievance proceedings given the underlying purpose of attorney discipline proceedings, which is to protect the public. We continue to express strong reservation as to the applicability of the doctrine of laches in attorney discipline proceedings and now conclude that, with the possible exception of cases involving both extraordinary circumstances of delay and actual prejudice resulting in a clear due process violation, applying the doctrine of laches to attorney discipline proceedings would not be consistent with the goal of such proceedings, which is to protect the public.

476 Md. at 348, 262 A.3d at 295 (quotation marks and citations omitted).

was a constant source of contention between Respondent and Mr. Langley for years as evidenced by Mr. Langley's repeated request for repayment and his suit against Respondent. Respondent presents no evidence he was prejudiced by the timing of the charges from Bar Counsel or the August 2023 hearing. In failing to present such evidence, Respondent has failed to meet his burden to establish this mitigating factor.

### *Absence of a Dishonest or Selfish Motive*

Second, Respondent argues that an unselfish motive was demonstrated through his "diligent" work for Mr. Langley on the Pier Rights litigation. The hearing judge found Respondent exhibited a selfish motive by asking for and failing to repay the $40,000 loan. Respondent's representation of Mr. Langley in the Pier Rights litigation has no bearing or connection to his choice not to repay Mr. Langley or misrepresent the loan in an attempt to avoid repayment. Accordingly, we conclude Respondent has failed to establish this mitigating factor.

### *Full and Free Disclosure to Bar Counsel*

Third, Respondent argues "[t]he entire record in this case demonstrates . . . full and free disclosure to Bar Counsel and [a] cooperative attitude toward the attorney discipline proceedings." In *Att'y Grievance Comm'n v. Brooks*, we concluded the hearing judge found full and free disclosure where the respondent did not "ma[ke] any false statements to the Office of Bar Counsel in the course of the investigation[,]" or "ma[ke] any misrepresentations in connection with the acts, omissions or transactions alleged in the Petition[.]" 476 Md. 97, 122, 258 A.3d 266, 280 (2021). In contrast here, the hearing

judge found Respondent made false statements throughout the investigation, disciplinary proceedings, and otherwise in connection with the allegations in the Petition. We conclude Respondent did not meet his burden and has failed to establish this mitigating factor.

### *Respondent's Asserted Mental Disability*

Fourth, Respondent claims "[a]n apparent mental disability" impacting his behavior and representations to Bar Counsel and the hearing judge. In *Att'y Grievance Comm'n v. Wemple*, we held the respondent failed to establish that poor health was a mitigating factor where he failed to provide relevant medical records or other support. 479 Md. 167, 203–04, 277 A.3d 427, 448–49 (2022). Here, Respondent does not provide medical records or other evidence which prove by a preponderance that he suffers from his asserted mental disability. Thus, we conclude that Respondent has failed to establish this as a mitigating factor.

### *Timely Good Faith Efforts to Make Restitution*

Fifth, Respondent asserts he made "timely payment of the entire balance of the [promissory n]ote after the judgment was entered against Respondent following the *Langley v. Donnelly* litigation had ended." This assertion is misleading. After nearly six years with no repayment, Mr. Langley was required to sue Respondent to recover the remaining loan balance. In all, it took Respondent nine years to completely satisfy the loan. Following the suit, "Respondent failed to pay the attorney's fees as ordered, which precipitated [Mr. Langley's attorney] filing a motion to reduce the award to a judgment[.]" While Respondent is correct that he eventually repaid Mr. Langley after being forced to do

so, he omits that he then failed to pay the attorney fees he incurred as a result. Respondent did not make timely good faith efforts to rectify his misconduct and, therefore, has failed to establish this mitigating factor.

### Lack of Harm to Mr. Langley

Sixth, Respondent asserts "[n]o financial harm to Mr. Langley, in fact Mr. Langley profited from the full payment of interest and principal of the April 1, 2013[,] Promissory Note[.]" Lack of harm to a client is not a mitigating factor we have so far accepted. *See Cassilly*, 476 Md. at 403, 262 A.3d at 327 (listing the mitigating factors this Court considers). "[O]ur case law does not establish that the lack of harm to a client will automatically result in the determination of a mitigating factor." *Att'y Grievance Comm'n v. Malone*, 482 Md. 82, 112, 285 A.3d 546, 564 (2022). Accordingly, we conclude Respondent has failed to establish this mitigating factor.

### The Absence of Prior Attorney Discipline

Seventh, Respondent argues an "absence of any prior *major* attorney discipline sanction." (Emphasis added). Respondent's asserted distinction between "major" and his own, impliedly, "minor" discipline does not exist. Respondent was previously disciplined. *Donnelly*, 458 Md. at 329, 182 A.3d at 797. Thus, Respondent has failed to establish a lack of prior discipline as a mitigating factor.

### Unlikelihood of Repetition of the Misconduct

Eighth, Respondent asserts that he is unlikely to repeat any of his misconduct. However, Respondent provides no argument or evidence to support his contention. As

30

such, we conclude Respondent has failed to establish this mitigating factor by a preponderance of the evidence.

## Aggravating Factors

> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [MARPC]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Donnelly*, 458 Md. at 321, 182 A.3d at 792.

The hearing judge found that Respondent: (1) had prior discipline; (2) displayed a selfish motive in failing to repay the loan; (3) submitted false testimony; (4) demonstrated a pattern of misconduct by failing to seek his client's informed consent and by mischaracterizing the loan agreement; (5) has substantial experience in the practice of law; and (6) has failed to acknowledge the wrongful nature of his conduct. The only aggravating factor finding to which Respondent did not except was substantial experience in the practice of law. We agree that Respondent has substantial experience in the practice of law and that this aggravating factor therefore is applicable.

We now address Respondent's exceptions to the hearing judge's other findings concerning aggravating factors.

31

## *Prior Discipline*

First, the hearing judge noted Respondent was previously disciplined by this Court. Respondent acknowledges his prior discipline but argues "[s]uch [a] prior case should be evaluated in light of all the complexities involved and not be used as an aggravating factor in the case now under review." An attorney's prior discipline is a pertinent factor for our consideration. *Compare Sloane*, 483 Md. at 172, 290 A.3d at 1050 ("Respondent's lack of prior attorney discipline over his extensive career cautions against the ultimate sanction of disbarment."), *with Att'y Grievance Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994) ("Viewed in light of the respondent's prior suspension and the nature of the conduct for which it was imposed, we believe the proper sanction for the intentional misrepresentation in this case is the ultimate one, disbarment.") *see also Att'y Grievance Comm'n v. Sperling*, 472 Md. 561, 615–17, 248 A.3d 224, 255–57 (2021) (observing that "all prior disciplinary offenses are aggravating circumstances[,]" but some prior disciplinary offenses may be particularly aggravating compared to others). We conclude Respondent's prior discipline is an applicable consideration, overrule Respondent's exception, and agree with the hearing judge that this factor applies to Respondent.

## *Selfish Motive*

Second, the hearing judge found Respondent exhibited a selfish motive in requesting and failing to repay the $40,000 loan. Respondent contends there was no selfish motive. By nature of Respondent's refusal to repay Mr. Langley and his repeated use of a fictitious defense to avoid repayment, the hearing judge's conclusion of a selfish motive is

supported by clear and convincing evidence. Accordingly, we agree with the hearing judge and overrule Respondent's exception.

### *False Testimony*

Third, the hearing judge found Respondent falsely testified by mischaracterizing the loan and claiming he advised Mr. Langley to seek independent counsel. Respondent repeats his prior exceptions on this topic. We agree with the hearing judge that Respondent submitted false testimony. Thus, we agree with the hearing judge that these falsehoods are an aggravating factor and, as a result, we overrule Respondent's exception.

### *Pattern of Misconduct*

Fourth, the hearing judge found Respondent displayed a pattern of misconduct by failing to get Mr. Langley's informed consent to any proposed modifications to the loan agreement and repeatedly mischaracterizing the loan. Respondent contends there was no pattern of misconduct. For the same reasons articulated in discussing Respondent's false testimony, we agree with the hearing judge that Respondent's pattern of mischaracterizations is an aggravating factor.

### *Refusal to Acknowledge the Wrongful Nature of the Misconduct*

Finally, the hearing judge found Respondent "failed to acknowledge the wrongful nature of his conduct, instead throughout the process and in [c]ourt he blames others for his own misconduct[.]" Indeed, Respondent takes exception and asserts that he did nothing wrong. As discussed *supra*, we agree Respondent committed various violations of the

33

MARPC, and we further agree Respondent's failure to acknowledge his wrongful conduct is an aggravating factor and we, therefore, overrule Respondent's exception.

## SANCTION

"It is well-established that the purpose of sanctions is not to punish the attorney. Sanctions are also designed to effect general and specific deterrence. Our guiding principle in determining sanctions for ethical violations is our interest in protecting the public and the public's confidence in the legal profession." *Bonner*, 477 Md. at 607, 271 A.3d at 268 (quotation marks and citations omitted). Through sanction, we "protect members of the public from attorneys who have demonstrated that they are unfit for the practice of law." *Kalarestaghi*, 483 Md. at 243, 291 A.3d at 764 (quotation marks and citation omitted). "[T]he appropriate sanction for [] violation[s] of the [MARPC] depends on the facts and circumstances of each case, including consideration of any mitigating factors [and aggravating factors]. [W]e impose a sanction that is commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* at 244, 291 A.3d at 765 (quotation marks and citations omitted) (alterations in original).

Petitioner recommends disbarment. Petitioner distinguishes Respondent's conduct from that of the attorneys in *Att'y Grievance Comm'n v. Collins,* 477 Md. 482, 270 Md. 917 (2022) and *Att'y Grievance Comm'n v. Sloane* to argue that Respondent's conduct warrants disbarment rather than suspension. Respondent asserts he committed no violations and no sanction is warranted. In *Collins*, disbarment was removed as the standard sanction in cases where "there was no theft or intentional misappropriation of

34

funds by the attorney, the attorney had not benefitted or profited from the misconduct, and no client had been harmed." 477 Md. at 530, 270 A.3d. at 946. Likewise, *Sloane* concluded disbarment was not appropriate where the respondent's misconduct was limited to a single matter, and he had no prior discipline. 483 Md. at 172, 290 A.3d at 1050 ("Respondent's lack of prior attorney discipline over his extensive career cautions against the ultimate sanction of disbarment.").

Here, unlike *Collins*, Respondent attempted to deprive Mr. Langley of $26,000 to $40,000. Respondent tried to accomplish this by lying to Mr. Langley and the circuit court in *Langley v. Donnelly*. Respondent's refusal to repay also harmed Mr. Langley by forcing him to go to court to recover and depriving him of tens of thousands of dollars for nearly a decade. *See Att'y Grievance Comm'n v. Edib*, 415 Md. 696, 721, 4 A.3d 957, 972 (2010) (recognizing that clients were harmed in two cases in which attorneys took fees for no work or incompetent work). And unlike *Sloane*, Respondent has been previously disciplined. *Donnelly*, 458 Md. at 325–26, 182 A.3d at 794–95. Further, Respondent brought no one to testify to his good reputation in the community. *See Sloane*, 483 Md. at 171, 290 A.3d at 1050 ("Respondent maintains a good reputation among his clients and friends, as evidenced by the testimony of his character witnesses.").

Respondent's purposeful and repeated mischaracterizations in an attempt to avoid repaying Mr. Langley and skirt discipline is not the harmless misconduct contemplated by *Collins* and *Sloane*. Respondent's case is closer to *Wemple*, as he "never acknowledged the wrongful nature of his misconduct; rather, [r]espondent belatedly attempted to excuse

35

his conduct with assertions of illness without proper documentation or support." 479 Md. at 204, 277 A.3d at 449.

"Candor and truthfulness are two of the most important moral character traits of a lawyer." *Myers*, 333 Md. at 449, 635 A.2d at 1319. It is this Court's obligation to "protect members of the public from attorneys who have demonstrated that they are unfit for the practice of law." *Kalarestaghi*, 483 Md. at 243, 291 A.3d at 764 (quotation marks and citation omitted). Based on Respondent's MARPC violations, the lack of mitigating factors, and the presence of several aggravating factors, we conclude the appropriate sanction must be disbarment.

## CONCLUSION

For the above reasons, we disbar Respondent for his violations of MARPC 19-301.4, 19-301.8(a), 19-303.1, 19-303.3(a), 19-308.1(a), and 19-308.4(a)–(d).

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST VERNON CHARLES DONNELLY.**