*Attorney Grievance Commission of Maryland v. Gary Pisner*, AG No. 23, September Term, 2023. Opinion by Killough, J.

**ATTORNEY MISCONDUCT – DISCIPLINE – DISBARMENT –** Respondent Gary Pisner violated Maryland Attorneys' Rules of Professional Conduct 1.1 (Competence), 1.15 (Safekeeping Property), 3.1 (Meritorious Claims and Contentions), 3.4 (Fairness to Opposing Party and Attorney), and 8.4(a) and (d) (Misconduct). These violations arose from Respondent's representation of himself in various matters relating to the Marion E. Pisner Revocable Trust in which he engaged in the intentional misappropriation of trust assets, failed to comply with court orders, and engaged in a persistent pattern of vexatious and frivolous litigation, causing harm to others, and burdening the judicial system.

The Supreme Court of Maryland ordered that Respondent be disbarred.

Circuit Court for Montgomery County
Case No.: C-15-CV-23-004631
Argued: March 3, 2025

IN THE SUPREME COURT

OF MARYLAND

AG No. 23

September Term, 2023

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GARY PISNER

---

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

---

Opinion by Killough, J.

---

Filed: July 14, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Attorney Grievance Commission of Maryland (the "Commission"), through Bar Counsel (hereinafter referred to collectively as "Petitioner"), filed a Petition for Disciplinary or Remedial Action (the "Petition") against Respondent, Gary Pisner. Petitioner charged Mr. Pisner with violating several provisions of the Maryland Attorneys' Rules of Professional Conduct,[1] specifically: Rule 1.1 (Competence), Rule 1.15 (Safekeeping Property), Rule 3.1 (Meritorious Claims and Contentions), Rule 3.4 (Fairness to Opposing Party and Attorney), and Rule 8.4(a) and (d) (Misconduct).

The misconduct that is the focus of this disciplinary proceeding stems from Respondent's conduct in connection with a series of legal disputes involving the Marion E. Pisner Revocable Trust, a trust he shares with his sister, Marla Pisner Rubinstein. By order dated December 14, 2023, this Court designated the Honorable Louis M. Leibowitz (the "Hearing Judge") of the Circuit Court for Montgomery County to consider the matter against Respondent and render findings of fact and conclusions of law. A two-day evidentiary hearing was held on June 10 and 14, 2024, and upon consideration of the evidence presented, the Hearing Judge found, by clear and convincing evidence, that Respondent violated each rule of professional conduct as alleged by Petitioner: Rules 1.1, 1.15, 3.1, 3.4, and 8.4(a) and (d). Petitioner did not file any exceptions and recommends

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct were ("MLRPC") renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified without substantive changes in Title 19 of the Maryland Rules. The conduct in this case spans both before and after the recodification. For ease of reference, we use the shorter MLRPC-style citations (e.g., Rule 1.1 rather than Maryland Rule 19-301.1).

that the Respondent be disbarred.  Respondent filed exceptions on September 18, 2024.

After oral argument, on March 5, 2025, we ordered Respondent disbarred.

We explain the reasons for that sanction here, agree with the facts and conclusions

reached by the Hearing Judge, and overrule the exceptions filed by Respondent.

## I.

### FINDINGS OF FACT

We summarize below the Hearing Judge's findings of fact.

Respondent was admitted to the Maryland Bar on June 14, 1989, and, at all times,

was an attorney in good standing in the State.  Respondent also holds law licenses from the

Commonwealth of Pennsylvania, the Commonwealth of Virginia, and the District of

Columbia.

The Marion E. Pisner Revocable Trust (the "Trust" or the "Pisner Trust") was

established on December 12, 2008, in Montgomery County, Maryland.  Upon the death of

the settlor, Marion E. Pisner, on January 2, 2009, her children—Respondent and Marla

Pisner Rubinstein—became the beneficiaries and co-trustees of the Pisner Trust.  Pisner

Trust assets included several residential properties located in Maryland and Washington,

D.C., as well as funds held in accounts at BB&T,[2] TD Bank, and SunBank.

In the fall of 2010, Respondent and Ms. Rubinstein met in Bel Air, Maryland, to

conduct an audit of the Pisner Trust's finances (the "Bel Air Meeting").  Although they

---

[2] In 2019, BB&T merged with SunTrust Banks.  The merged company officially became known as Truist Financial Corporation.  The Truist account (formerly BB&T account) was opened by Marion Pisner before her death in 2009.

disagreed on certain details of the meeting, both agreed that Ms. Rubinstein confronted Respondent about his use of Trust funds for personal expenses, and that Respondent promised to provide documentation regarding those expenditures. They also agreed that Ms. Rubinstein would assume day-to-day management of the Trust going forward. However, according to Ms. Rubinstein, Respondent never provided the documentation or financial information necessary for her to fulfill that role.

The Hearing Judge found Respondent's testimony regarding the Bel Air Meeting to be inconsistent. Respondent initially testified that he had provided Ms. Rubinstein with all relevant Trust documents, stating that she "walked out of the meeting with all the documents. Everything." Later, however, he acknowledged—and Ms. Rubinstein confirmed—that he had brought only a ledger to the meeting. Based on these inconsistencies, the Hearing Judge concluded that Respondent did not, in fact, relinquish control of the Pisner Trust to Ms. Rubinstein following the Bel Air meeting.

The ledger maintained by Respondent reflects approximately 70 personal transactions between November 2009 and August 2013. These include tens of thousands of dollars in payments related to Respondent's divorce, personal credit card charges, and self-designated "loans" from the Trust. Ms. Rubinstein had no access to the Trust's bank accounts and was unaware of these transactions until she obtained the relevant bank statements from BB&T during the litigation described below.

3

### A.

### *Marion E. Pisner Trust v. Rubinstein Case No. 427983V*
### *in the Circuit Court for Montgomery County*

On December 13, 2016, Respondent, identifying himself as "Attorney for & Co-Trustee of the Marion E. Pisner Trust," filed a Petition for a Declaration of Rights under Md. Code Ann., Cts. & Jud. Proc. § 3-408 in the Circuit Court for Montgomery County. He asserted that, in his view, the Pisner Trust had "ceased to function" in accordance with its terms and requested that the court provide "binding guidance" on its administration. Respondent signed the petition both as counsel and co-trustee.

In response, on May 24, 2017, Judge Sharon Burrell issued a Show Cause Order to Ms. Rubinstein. On July 31, 2017, Ms. Rubinstein filed a substantive response requesting an independent audit of the Pisner Trust from its inception. She cited Respondent's failure to cooperate with an accounting and his refusal to provide personal credit card statements. She further alleged that Respondent had used Trust funds for personal expenses, including attorney's fees related to his divorce.

On cross-examination in this disciplinary matter, Respondent admitted to using Pisner Trust assets for personal obligations but testified that he had previously loaned the Trust money, suggesting that some of the withdrawn funds were owed to him. However, he presented no documentation to support this claim, and the Hearing Judge did not find it credible.

On August 24, 2017, Judge Anne K. Albright issued a second Show Cause Order, directing both parties to explain why the court should not assume judicial control of the

Pisner Trust and remove them as co-trustees. Ms. Rubinstein responded substantively; Respondent, by contrast, did not respond on the merits, and instead filed a motion to strike Ms. Rubinstein's response.

At the Show Cause hearing on September 28, 2017, Judge Albright removed both parties as co-trustees and appointed Robert McCarthy, Esq., as successor trustee. Mr. McCarthy had no prior relationship with either party.

On November 13, 2017, Respondent filed an interlocutory appeal of Judge Albright's order and moved for reconsideration and a stay. Both motions were denied on January 16, 2018. The Appellate Court of Maryland dismissed the appeal on February 21, 2018, and this Court subsequently denied *certiorari*.

Judge Albright also granted Mr. McCarthy's request to hire an accountant and expand the scope of the audit. A status hearing was set for January 25, 2018. On the eve of the hearing, Respondent filed another interlocutory appeal and sought a stay. The Appellate Court assumed jurisdiction, halting the hearing.

On January 26, 2018, Mr. McCarthy mailed a letter to Respondent at his residence in Fairfax, Virginia, again requesting Trust documentation and advising that his conduct potentially violated the Maryland Attorneys' Rules of Professional Conduct. Respondent replied with documents that Mr. McCarthy deemed unresponsive. Mr. McCarthy thereafter filed a suggestion of contempt on February 1, 2018.

On February 9, 2018, the court issued a Show Cause Order requiring Respondent to appear on March 15, 2018, to explain why he should not be held in contempt. Instead of responding on the merits, Respondent filed a three-part motion seeking a more definite

5

statement, a continuance, and access to trustee records. Judge Ronald Rubin denied the motion in full on April 13, 2018.

On March 5, 2018, Respondent filed an Answer to the contempt petition, asserting that he had produced 81 documents and was under no obligation to produce more. Mr. McCarthy responded by reiterating his request for full compliance with the October 2, 2017 order. Two days before the contempt hearing, on April 2, 2018, Respondent submitted an affidavit in support of his motions and in opposition to the contempt petition, affirming under penalty of perjury that the documents provided in January 2018 were the only documents in his possession dating back to January 2015.

The contempt hearing was held on April 4, 2018, before Judge Harry C. Storm. Judge Storm denied the contempt petition on the ground that the court's October 2, 2017, order lacked specificity. Judge Storm ordered Respondent and Ms. Rubinstein to produce, "in paper format or electronically, [certain] documents within Gary Pisner or Marla Rubinstein's possession, custody, control or access related to the [Pisner Trust] for the period January 1, 2009 – October 2, 2017," by April 27, 2018.

Before the April 27 deadline, on April 24, 2018, Respondent moved to remove Mr. McCarthy as substitute trustee, alleging a "breach of trust" based on Mr. McCarthy's interpretation of his fiduciary duties. Judge Jill R. Cummins denied Respondent's motion on May 21, 2018.

Respondent failed to meet the court's deadline to produce documents, and on April 30, Mr. McCarthy filed a renewed contempt petition seeking incarceration. The court issued another Show Cause Order on May 4, 2018, requiring Respondent to respond and

appear on June 7, 2018. Again, rather than substantively responding, Respondent filed a motion for a more definite statement, asserting that he had produced everything he "deemed" responsive. In total, he provided Mr. McCarthy with 944 pages of documents. The court denied the motion on June 6, 2018.

Judge Michael D. Mason presided over the June 7, 2018, hearing. After taking testimony from Respondent, Judge Mason found him in contempt, noting that Respondent had failed to provide source documents or ledgers and stating that it was "inconceivable" that, as an attorney and fiduciary of the estate, he would not retain documentation supporting Trust expenditures. Judge Mason imposed a 60-day sentence but stayed execution until July 20, 2018, to allow Respondent another opportunity to comply.

On July 11, 2018, Respondent filed a notice of appeal and a motion for reconsideration of Judge Mason's June 7 contempt finding, asserting that he had fully complied with the court's orders and alleging that Mr. McCarthy's accountant, Dana Evans, made false statements during the contempt hearing. At a follow-up hearing on July 20, 2018, Judge Mason reaffirmed the contempt finding and denied Respondent's motion for reconsideration but, at Mr. McCarthy's request, declined to impose the 60-day incarceration sentence.

On November 19, 2018, Respondent filed a notice of appeal challenging eleven separate orders. While those appeals were pending, Mr. McCarthy moved for approval of the final Pisner Trust distribution. Mr. McCarthy argued that Respondent's failure to

maintain records violated his duties under Md. Code Ann., Est. & Trusts ("ET") § 14.5-802(b).[3]

Mr. McCarthy proposed distributing the Pisner Trust's remaining net balance—minus $50,000—to Ms. Rubinstein, with the withheld amount to be released to Respondent upon execution of a general release and cessation of further litigation.

On February 19, 2019, Respondent filed a notice of opposition to the proposed distribution, asserting that it was based on "false" facts. He again accused Mr. McCarthy and Ms. Evans of ethical violations and of improperly dissipating approximately $500,000 in Trust funds.

On March 11, 2019, the circuit court mailed notice of the distribution hearing to all parties, including to Respondent at his long-standing address in Fairfax, Virginia—the

---

[3] Section 14.5-802 of the Maryland Trust Act states, in pertinent part:

(b) Subject to the rights of persons dealing with or assisting the trustee as provided in § 14.5-909 of this title, a sale, an encumbrance, or any other transaction involving the investment or management of trust property entered into by the trustee for the personal account of the trustee or which is otherwise affected by a conflict between the fiduciary and personal interests of the trustee is voidable by a beneficiary affected by the transaction unless:
    (1) The transaction was authorized by the terms of the trust;
    (2) The transaction was approved by the court;
    (3) The beneficiary did not commence a judicial proceeding within the time allowed by law;
    (4) The beneficiary consented to the conduct of the trustee, ratified the transaction, or released the trustee in compliance with § 14.5-907 of this title; or
    (5) The transaction involves a contract entered into or claim acquired by the trustee before the person became or contemplated becoming the trustee.
Md. Code Ann., Est. & Trusts § 14.5-802(b).

same address he had consistently used throughout the proceedings. Despite having received notice, Respondent did not attend the hearing.

At the hearing, both Mr. McCarthy and Ms. Rubinstein testified. Relying on their testimony and noting Respondent's prior contempt findings, Judge James A. Bonifant concluded that an inference could be drawn that Respondent had wrongfully distributed excess funds to himself. The court found that Mr. McCarthy's proposed distribution was appropriate and long overdue, stating: "10 years while this has been pending . . . that is just totally inappropriate. It's time for this matter to come to a close." Accordingly, Judge Bonifant granted the motion to approve the Pisner Trust distribution and memorialized his findings in an order signed on April 9, 2019.

On April 11, 2019, Mr. McCarthy filed a response to Respondent's previously filed notice of appeal (dated November 19, 2018), moving to strike it from the record. In response, Respondent filed a 15-page pleading titled "Answer to Robert McCarthy's Motion to Strike Notice of Appeal, Request for Reconsideration of this Court's Order of April 9, 2019, with a Request for a Stay, If Necessary." In that filing, Respondent renewed claims previously rejected by the court, reasserted his authority as the Trust's attorney, and alleged that both Mr. McCarthy and Ms. Rubinstein had perjured themselves at the June 7 contempt hearing. Judge Bonifant denied Respondent's motion for reconsideration without a hearing on May 21, 2019.

In the interim, on May 13, 2019, Respondent filed another notice of appeal to the Appellate Court, incorporating the April 9, 2019 order along with the eleven previously

9

challenged orders. The Appellate Court later consolidated the pending appeals into a single case.

On June 11, 2019, Judge Robert A. Greenberg issued a Show Cause Order requiring Respondent to explain in writing why the appeal should not be dismissed for failure to comply with the rules. On June 24, 2019, Respondent filed a response that largely reiterated the same arguments presented in his April 29, 2019 Answer. He also moved to recuse Judge Greenberg, citing his role as administrative judge of the Montgomery County Circuit Court and his history of appointing Mr. McCarthy in other estates and trusts cases. On August 9, 2019, Judge Greenberg denied Respondent's motion to recuse and set a hearing on the motion to strike.

### B.

### *Proceedings Before the Appellate Court of Maryland*

On March 18, 2020, the Appellate Court issued an unreported opinion thoroughly reviewing and affirming each of the challenged rulings, including the contempt finding against Respondent. *Pisner v. McCarthy*, Nos. 1037 and 3041, Sept. Term, 2018, 2020 WL 1303623 (Mar. 18, 2020). Respondent filed a motion for reconsideration and a petition for writ of *certiorari* to this Court, which we denied on July 20, 2020. *Pisner v. McCarthy*, 469 Md. 670 (2020).

Following these denials, Respondent sent a letter to the Clerk of the Appellate Court of Maryland criticizing the opinion's structure and alleging "procedural failure." The Clerk responded that the Appellate Court would not comment further and noted Respondent's failure to copy opposing counsel.

## C.

### *Proceedings Before the Superior Court of the District of Columbia*

While the trust litigation remained pending in the Maryland state courts, Respondent, in his personal capacity, initiated a separate lawsuit against Ms. Rubinstein in the Superior Court for the District of Columbia on January 14, 2019. *Pisner v. Rubinstein*, No. 2019 CA 000229 B (D.C. Super. Ct.). The complaint asserted claims for breach of contract, fraud, abuse of process, defamation, and breach of fiduciary duty. The abuse of process claim was based entirely on Ms. Rubinstein's filings in the Montgomery County Circuit Court—filings made in response to Respondent's own earlier suit.

As a result, Ms. Rubinstein retained counsel and, on April 18, 2019, moved to dismiss the case, arguing that the District of Columbia was an improper forum in light of the still-active litigation in Maryland. Judge Florence Y. Pan granted the motion to dismiss at a hearing held on June 14, 2019. Respondent sought reconsideration on July 12, 2019, and filed a notice of appeal three days later. On August 7, 2019, Judge Pan denied the motion for reconsideration, noting that Respondent had failed to articulate any procedural or legal basis for relief. The District of Columbia Court of Appeals affirmed the dismissal in an unpublished per curiam opinion issued on February 25, 2021. *Pisner v. Rubinstein*, 246 A.3d 156 (D.C. 2021).

***Pisner v. Rubinstein* in the U.S. District
Court for the District of Maryland**

On January 4, 2021—approximately six weeks before the D.C. Court of Appeals issued its opinion—Respondent filed a second lawsuit against Ms. Rubinstein, this time in the U.S. District Court for the District of Maryland. *See Pisner v. Rubinstein*, No. CV TDC-21-0020, 2022 WL 294826 (D. Md. Jan. 31, 2022), *aff'd*, No. 22-1294, 2022 WL 3681660 (4th Cir. Aug. 25, 2022). The allegations were nearly identical to those asserted in the earlier D.C. case. This time, Respondent sought $3.7 million in compensatory damages and $2 million in punitive damages.

Ms. Rubinstein again retained counsel and moved to dismiss, arguing that the claims were either resolved or precluded by the ongoing Montgomery County litigation. Rather than substantively responding, Respondent filed a motion to strike the motion to dismiss.

On January 31, 2022, Judge Theodore D. Chuang granted Ms. Rubinstein's motion to dismiss, holding that the breach of contract and fiduciary duty claims were barred by *res judicata*, and that the remaining claims failed to state a plausible basis for relief.

In response, Respondent filed a notice of appeal to the U.S. Court of Appeals for the Fourth Circuit on March 16, 2022. The following day, he filed a 37-page submission styled as "objections" to Judge Chuang's ruling, accusing the court of "judicial lethargy" and misapplication of the law. The Fourth Circuit affirmed the dismissal in a one-paragraph per curiam opinion, finding "no reversible error." *Pisner v. Rubinstein*, No. 22-1294, 2022 WL 3681660, at *1 (4th Cir. Aug. 25, 2022).

### *Pisner v. McCarthy et al. in the U.S. District*
### *Court for the District of Maryland*

On January 5, 2022, Respondent initiated another lawsuit in the U.S. District Court for the District of Maryland, this time naming Mr. McCarthy, Kevin McCarthy (Mr. McCarthy's law partner and son), and Ms. Evans as defendants.[4]

The complaint largely recycled claims Respondent had previously raised in the Montgomery County proceedings. All three defendants moved to dismiss, arguing that the claims were barred by *res judicata* and collateral estoppel and otherwise failed to state a claim upon which relief could be granted.

On September 26, 2022, Judge George Hazel issued a memorandum opinion granting the motions to dismiss. *Pisner v. McCarthy*, 630 F. Supp. 3d 690 (D. Md. 2022), *aff'd*, No. 23-1655, 2024 WL 1615012 (4th Cir. Apr. 15, 2024). The court concluded that Respondent's claims were both legally barred and substantively deficient.

Following the dismissal, on December 27, 2022, Respondent filed a "motion for relief" pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Judge Stephanie A. Gallagher denied the motion in a written opinion issued on March 27, 2023. Respondent then filed a motion to alter or amend that ruling, which the court also denied on May 17, 2023. On June 16, 2023, Respondent noted an appeal to the Fourth Circuit. An

---

[4] The Hearing Judge specifically noted that Kevin McCarthy had no meaningful involvement in the underlying Montgomery County litigation but was nonetheless named as a defendant.

unpublished per curiam opinion was filed on April 15, 2024, affirming Judge Gallagher's decision.

## II.

### HEARING JUDGE'S CONCLUSIONS OF LAW

The Hearing Judge concluded that Respondent violated MARPC 1.1, 1.15, 3.1, 3.4, and 8.4(a) and (d). Petitioner did not file exceptions. Respondent noted several exceptions to both the Hearing Judge's findings of fact and conclusions of law.

## III.

### STANDARD OF REVIEW

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record." *Attorney Grievance Commission v. Portillo*, 473 Md. 584, 598-99 (2021) (quoting *Attorney Grievance Commission v. Hoerauf*, 469 Md. 179, 207-08 (2020)). Pursuant to Md. Rule 19-728(b), Respondent filed exceptions to the Hearing Judge's factual findings and conclusions of law, however, we leave undisturbed the Hearing Judge's findings of fact "unless those findings are clearly erroneous." *See id.* Md. Rule 19-740(b)(2)(B) provides:

> [This Court] shall determine whether the findings of fact have been proved by the requisite standard of proof set out in [Md.] Rule 19-727(c). Th[is] Court may confine its review to the findings of fact challenged by the exceptions. Th[is] Court shall give due regard to the opportunity of the Hearing Judge to assess the credibility of witnesses.

We assess the Hearing Judge's legal conclusions under a *de novo* standard of review. *Attorney Grievance Commission v. Moody*, 457 Md. 90, 110 (2017); Md. Rule 19-

14

740(b)(1) ("The [Supreme Court of Maryland] shall review [*de novo*] the circuit court judge's conclusions of law."). We retain "the ultimate authority to decide whether a lawyer has violated the professional rules." *Attorney Grievance Commission v. Harrington*, 367 Md. 36, 49 (2001) (citation modified). Respondent's exceptions are addressed below.

## IV.

### EXCEPTIONS

Pursuant to Maryland Rule 19-728(b), "each party may (1) file exceptions to the findings and conclusions of the hearing judge, (2) recommendations concerning the appropriate disposition under Rule 19-740 (c), and (3) a statement of costs to which the party may be entitled under Rule 19-709." Here, Respondent filed a 70-page document titled "Exceptions." Respondent's Exceptions primarily challenge the Hearing Judge's factual findings and procedural rulings but do not meaningfully address the merits of the misconduct or the appropriate sanction. He disputes the sufficiency of the disciplinary petition, alleges investigatory and discovery misconduct, and contests the credibility of witnesses, yet he offers no evidence to support these claims. Respondent's contentions in the Exceptions fall into four broad categories: (1) the sufficiency of the Petition for disciplinary charges; (2) alleged misconduct by Petitioner during its investigation; (3) alleged discovery deficiencies; and (4) challenges to the Hearing Judge's factual findings. Each exception lacks merit and is overruled.[5]

---

[5] As noted herein, Respondent's contentions in the Exceptions primarily challenge the Hearing Judge's factual findings and procedural rulings. As we discuss herein, we overrule the Respondent's exceptions to the Hearing Judge's findings of fact and

15

*1. Sufficiency of the Petition*

Respondent first argues that the Petition failed to provide sufficient notice of the charges against him.

A disciplinary petition is a notice pleading and is "deemed sufficient [s]o long as the petition informs the attorney of the misconduct charged in language which is clear and sufficiently specific to enable the attorney to prepare a defense." *Attorney Grievance Commission v. McDonald*, 437 Md. 1, 43 (2014) (quoting *Attorney Grievance Commission v. Tanko*, 408 Md. 404, 420-21 (2009)). This Court requires no particular form or detail beyond this threshold. *Id.* A review of the Petition in this case reveals that the charges were clearly and sufficiently pleaded.

The Petition states, in relevant part:

58. Between January 2009 and 2017, the Respondent disbursed $1,383,486.83 to Ms. Rubinstein and disbursed an additional $1,976,750.72. Of the $1,976,750.72, $1,158,217.05 was disbursed to the Respondent or for the Respondent's benefit and the remaining $818,533.67 was unaccounted for – the Respondent claimed that the funds were disbursed for the benefit of the Trust. Because the Respondent failed to provide any proof to substantiate his claims, the entire $1,976,750.72 was charged toward the Respondent's share.

59. While acting as attorney and co-trustee of the Trust, the Respondent failed to properly account for the funds disbursed from the Trust, including failing to maintain appropriate records to substantiate the purpose of disbursements made from the Trust and disbursing funds to himself in excess to those distributed to Ms. Rubinstein.

procedural rulings. To the extent that Respondent's 70 pages of exceptions are directed to any conclusions of law, they are also overruled.

16

We have held that even where a petition is not the "model of clarity," if the allegations make clear the alleged wrongdoing, then the petition will be deemed sufficient. *See Tanko*, 408 Md. at 422. These paragraphs more than clear this threshold. These paragraphs alone make clear the alleged misconduct and describe how said conduct violates professional standards. We overrule this exception.

*2. Allegations of Investigative Misconduct*

Respondent next asserts that Petitioner engaged in misconduct during its investigation, including the claim that the substitute trustee, Mr. McCarthy, drafted the Petition. This allegation is unsupported by the record. Bar Counsel represented in the Commission's reply that Bar Counsel "drafted, signed and filed" the Petition in December 2023.

Respondent also alleges an improper relationship between Mr. McCarthy and former Bar Counsel. However, he offers no evidentiary support, and the record contains none. These allegations were raised before the Hearing Judge and explored during Respondent's cross-examination of Mr. McCarthy. In response, Mr. McCarthy testified that Bar Counsel had previously prosecuted a disciplinary matter in which he was reprimanded: "I do not consider [Bar Counsel] a dear friend of mine in any stretch of the imagination. Then she became Bar Counsel, and I've had no relationship with her since that hearing 11 years ago."

The Hearing Judge considered and rejected these allegations, finding Respondent's testimony to be "incredible":

This Court notes that Respondent testified and argued that Mr. McCarthy had it out for him, alternately because Mr. McCarthy was conspiring with Ms. Rubinstein or because Mr. McCarthy assisted the Attorney Grievance Commission in consideration of more lenient treatment in his own unspecified Attorney Grievance Commission investigations. Respondent did not produce any evidence of any of these things. Accordingly, this Court finds that Respondent's allegations on this front were meritless. However, none of this Court's findings rely on Mr. McCarthy's credibility. His testimony was largely duplicative of the court records in the various cases filed by Respondent. Other evidence of the Commissions' allegations was corroborated throughout the case, including by Respondent's own admissions.

We likewise find Respondent's allegations to be without merit and overrule this exception.

*3. Alleged Discovery Deficiencies*

Respondent contends that Bar Counsel failed to comply with discovery obligations and withheld exculpatory evidence. He further alleges that Mr. McCarthy conspired with the Commission and Bar Counsel to conceal such evidence. These allegations are unsupported by the record. Respondent offers no documentary or testimonial evidence to substantiate claims of misconduct or collusion.

In contrast, Petitioner affirms that every allegation set forth in the Petition was supported by documentary evidence, and the Hearing Judge found that all relevant materials were disclosed to Respondent during discovery and introduced at the hearing. Respondent was also afforded ample opportunity to cross-examine both Bar Counsel and Mr. McCarthy and did so extensively. The Hearing Judge explicitly rejected Respondent's misconduct allegations, finding his testimony not credible.

18

We have also explained that "[w]e will not substitute our judgment for the judgment of the hearing judge with regard to credibility determinations." *Attorney Grievance Commission v. Bonner*, 477 Md. 576, 613-14 (2022). Considering the absence of corroborating evidence and the Hearing Judge's credibility determinations, we overrule this exception.

*4. Exceptions to the Hearing Judge's Factual Findings*

Respondent's remaining exceptions to the Hearing Judge's factual findings are similarly unavailing. "If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Tanko*, 408 Md. at 419.

Respondent's exceptions span over 40 pages but do not identify any clear error. Instead, he offers alternative interpretations of the evidence or reiterates arguments already rejected by the lower courts.

Respondent challenges the Hearing Judge's conclusion that he intentionally misappropriated Pisner Trust assets, arguing that there is no evidence that he intended to permanently deprive his sister of funds or that he acted secretly for personal gain. He contends that the Hearing Judge failed to consider relevant testimony and alternative explanations for disputed expenditures, including his belief that the payments were permissible distributions or reimbursements.

Respondent also contests the Hearing Judge's credibility determinations, particularly his reliance on the testimony of Ms. Rubinstein and Mr. McCarthy. He claims that their statements were conclusory and self-serving, and that Mr. McCarthy lacked

19

personal knowledge of the transactions at issue. He further contends that the court failed to explain why it did not credit certain evidence, including bank records and his own testimony.

Finally, Respondent takes exception to the Hearing Judge's findings that he failed to maintain Trust records and knowingly disobeyed court orders. He asserts that he produced all documents in his possession and made reasonable efforts to obtain others from third parties, including a former accountant. He denies willful disobedience, maintaining that any noncompliance was due to circumstances beyond his control.

These arguments do not render the Hearing Judge's findings clearly erroneous. As we have consistently held, challenges that merely offer alternative interpretations of the record or reiterate arguments previously rejected do not suffice to disturb findings supported by clear and convincing evidence. *See Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 384 (2001). "[T]he hearing judge is entitled to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Attorney Grievance Commission v. Kane*, 465 Md. 667, 676 n.4 (2019) (quoting *Attorney Grievance Commission v. Guida*, 391 Md. 33, 50 (2006)). The Hearing Judge was similarly entitled to credit Ms. Rubinstein's and Mr. McCarthy's testimony over Respondent's testimony*, see Bonner*, 477 Md. at 613. We therefore overrule these exceptions.

## V.

### CONCLUSIONS OF LAW

20

Based on our independent review of the record, we agree with the Hearing Judge's legal conclusions that Respondent violated MARPC 1.1, 1.15, 3.1, 3.4, and 8.4(a) and (d).

### *Rule 1.1 - Competence*

The Hearing Judge found by clear and convincing evidence that Respondent violated Rule 1.1 by (1) failing to maintain financial records during his tenure as attorney for the Pisner Trust, and (2) refusing to produce those records when ordered by the court.

Rule 1.1 provides: "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." This Court has recognized that "sound record-keeping is an essential part of competent representation, and [that] an attorney's failure to keep or produce records can itself lead to a violation of the M[A]RPC." *Attorney Grievance Commission v. London*, 427 Md. 328, 345 (2012).

Following the death of Marion Pisner in 2009, Respondent assumed responsibility for the administration of the Pisner Trust and served as its attorney. He retained exclusive control over the Trust's records and operations. Respondent managed the Pisner Trust's accounting software, received bank statements, prepared and filed tax returns, and oversaw the management of Trust-owned properties. He alone had access to the Pisner Trust's financial documentation.

Despite holding himself out as the Pisner Trust's legal representative and fiduciary, Respondent failed to maintain adequate records of Pisner Trust transactions and refused to

21

produce the required documentation when ordered by the court. His refusal significantly impeded the efforts of the court-appointed substitute trustee, Mr. McCarthy, to complete a fiduciary accounting of the Trust and fulfill the duties assigned by the court.

The Hearing Judge appropriately analogized the Respondent's conduct to that of the attorney in *Attorney Grievance Commission v. Woolery*, where we held that an attorney violated Rule 1.1 by failing to disclose material information about estate assets in his possession. 462 Md. 209, 232-33 (2018). We emphasized that the attorney's withholding of information obstructed the special administrator's ability to perform a fiduciary accounting—an additional violation of Rule 1.1. *Id.* at 232.

Respondent's misconduct here was similarly obstructive. By his own admission, Respondent actively concealed Pisner Trust records to avoid disclosing them during his divorce proceedings. Respondent also testified that he transferred the records to an accountant for "safekeeping" during the litigation so that his former spouse could not obtain them. Even after the divorce concluded in 2010, Respondent never attempted to retrieve those records. Despite multiple opportunities—including informal requests and three separate court orders—Respondent failed to produce sufficient documentation to permit an accounting of the Pisner Trust.

The Hearing Judge further concluded that Respondent's fiduciary obligations as a trustee, governed by ET §§ 14-405(e)(1) and (i), imposed a separate and continuing duty to maintain complete records of all Pisner Trust property and transactions. We agree with the Hearing Judge that Respondent violated of Rule 1.1. At bottom, Respondent had an obligation to preserve and organize the Pisner Trust's financial records in a manner that

22

would ensure accessibility and his decision to withhold, obscure, or destroy these records constituted a clear violation of the duty of competent representation.

### *Rule 1.15 - Safekeeping Property*

The Hearing Judge concluded that Respondent violated Rule 1.15(a) by failing to maintain adequate records and by disbursing Trust funds to himself for personal use without authorization or consent from his co-trustee, Ms. Rubinstein.

Rule 1.15(a) requires attorneys to properly safeguard client or third-party property in their possession. To comply with the rule, such property must be kept separate from the attorney's personal property, complete and accurate records of all funds and other assets must be created and maintained, and those records must be preserved for at least five years.

In *Woolery*, we held that an attorney violates Rule 1.15 by depositing estate funds into a personal attorney trust account and later using those funds for litigation expenses and self-reimbursement, without authorization. 462 Md. at 241. We explained in *Woolery* that an attorney misappropriates funds when he disburses funds to himself that he was not authorized to collect or retain. *Id.* at 243.

In the instant matter, Pisner Trust records, once obtained, revealed that Respondent received distributions in excess of his share: in 2009, he distributed approximately $1.19 million to himself while Ms. Rubinstein received $1.06 million, and in 2010, he received $136,410.93 despite a lack of supporting source documentation, while Ms. Rubinstein received $54,894.78. The record further demonstrated that many of these unauthorized distributions were used for personal expenses, including legal fees, credit card payments,

and educational costs, none of which were justified or approved. We agree with the Hearing Judge's conclusion that Respondent violated Rule 1.15.

### *Rule 3.1 - Meritorious Claims and Contentions*

The Hearing Judge found, by clear and convincing evidence, that Respondent violated Rule 3.1, which provides:

> An attorney shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. An attorney may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

Comment 1 to Rule 3.1 explains: "The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure." Here, Respondent repeatedly misused the judicial system by initiating four separate lawsuits, filing more than eighteen motions and appeals across three jurisdictions, and advancing legal theories that lacked merit. In nearly every instance, his filings were denied, and he demonstrated a pattern of continuing litigation after adverse rulings, often accompanied by accusations that the courts had engaged in "improper" legal work.

The Hearing Judge compared Respondent's conduct to that which we held sanctionable in *Attorney Grievance Commission v. Mixter*, where we held that Rule 3.1 is violated where an attorney continued to litigate a matter after the absence of a good faith basis for the matter became apparent. 441 Md. 416, 511 (2015). Respondent's behavior

24

here is analogous. He persisted in litigation despite repeated adverse rulings, and frequently reasserted claims that had already been adjudicated.

Similarly, in *Attorney Grievance Commission v. Sloane*, we sustained a Rule 3.1 violation where the respondent raised baseless issues that had already been ruled upon. 483 Md. 131, 157 (2023). Similar conduct is reflected in Respondent's filings in this case.

The Hearing Judge identified a specific pattern in Respondent's litigation: when unsuccessful in Maryland state court, Respondent filed a nearly identical suit in the District of Columbia Superior Court. When that was unsuccessful, Respondent filed the same claims again in the U.S. District Court for the District of Maryland.

Respondent pursued identical claims in multiple forums without curing a plainly fatal legal defect, indicating an absence of any good faith basis for relief and no effort to seek a legitimate change in the law.

These violations were not without consequence. The Hearing Judge found that Respondent's frivolous filings caused actual harm to others. Ms. Rubinstein incurred substantial legal expenses in defending multiple actions.[6] Mr. McCarthy and Ms. Evans both experienced increased liability insurance premiums as a result of being named in the litigation. While Respondent failed in every action, he imposed significant financial and

---

[6] Ms. Rubinstein testified that she spent approximately $130,000 in legal fees. However, the Hearing Judge explained that she provided no corroboration of that amount. Consequently, the court made no findings as to the amount of fees Ms. Rubinstein incurred or paid. The Hearing Judge made clear, however, that "[t]he amount is hardly the point. That she had to pay anything to defend multiple frivolous lawsuits and appeals is an aggravating factor."

emotional burdens on the other parties and expended judicial resources in multiple jurisdictions.

Accordingly, based on these findings, the Hearing Judge concluded that Respondent violated Rule 3.1 by initiating and maintaining multiple meritless proceedings in bad faith, and by continuing to litigate matters long after he had lost on the merits. We agree that Respondent's conduct constituted an abuse of the judicial process and caused concrete harm to opposing parties and the courts in violation of Rule 3.1.

### *Rule 3.4 - Fairness to Opposing Party and Attorney*

The Hearing Judge found, by clear and convincing evidence, that Respondent violated Rule 3.4(c), which prohibits attorneys from knowingly disobeying a tribunal's directives unless they make an open refusal based on a good faith belief that no valid obligation exists. In this case, Respondent was ordered by multiple judges—Judge Albright, Judge Storm, and Judge Mason—to produce specific documents relating to the Pisner Trust, in a matter that Respondent himself had initiated. Despite these orders, Respondent failed to provide the required documentation and was ultimately held in contempt of court by Judge Mason.

In *Attorney Grievance Commission v. Storch*, the attorney failed to produce estate property at a court hearing, left the hearing without permission, and was held in contempt by the court. 445 Md. 82, 86-87 (2015). Despite multiple opportunities, the attorney never turned over the estate property. We held that her repeated failure to follow explicit court orders demonstrated a knowing disobedience toward court orders and rules and constituted a clear violation of Rule 3.4(c). *Id.* at 89-90.

26

In the instant matter, Judge Mason emphasized the gravity of Respondent's misconduct, stating it was "inconceivable" that an attorney and fiduciary would not retain the source documents related to trust disbursements. Judge Mason also found it implausible that Respondent, as both a trustee and attorney, did not maintain documentation to demonstrate that expenditures were made on behalf of the Pisner Trust, rather than for personal use.

Throughout more than eighteen months of litigation, Respondent made no meaningful attempt to comply with the court's discovery orders. He testified that he believed he had already turned over the appropriate documents and made no effort—even in the face of potential incarceration—to retrieve responsive documents. The Hearing Judge found that Respondent never seriously attempted to obtain or produce the required documents, and that this prolonged noncompliance constituted a knowing violation of a tribunal's order in contravention of Rule 3.4(c). *See Attorney Grievance Commission v. Edwards*, 462 Md. 642, 704 (2019) (holding that an attorney violates Rule 3.4(c) by repeatedly failing to produce documents as directed by court order).

### *Rule 8.4 - Misconduct*

The Hearing Judge concluded that Respondent's conduct also violated Rule 8.4, which governs attorney misconduct. Pursuant to Rule 8.4 (a) and (d), it is professional misconduct to violate the Rules of Professional Conduct and to engage in conduct prejudicial to the administration of justice. Respondent violated both subsections by breaching multiple ethics rules, including Rule 1.1 (competence), Rule 1.15 (safekeeping property), Rule 3.1 (meritorious claims), and Rule 3.4 (fairness to opposing party and

27

attorney). Based upon our *de novo* review, we agree with the Hearing Judge's conclusion that Respondent's failure to comply with multiple discovery orders violated Rule 3.4(c).

Respondent repeatedly made baseless accusations and pursued frivolous litigation against Ms. Rubinstein, Mr. McCarthy, Ms. Evans, and even Mr. McCarthy's son (Kevin McCarthy)—which the Hearing Judge noted had nothing to do with Respondent's alleged grievances against Mr. McCarthy. Respondent's claims lacked any factual or legal foundation and were often resubmitted after being rejected by trial and appellate courts. The Hearing Judge also found that Respondent misappropriated Pisner Trust assets for personal use, failed to maintain proper records, and concealed assets in a divorce proceeding in Virginia by evading a discovery order. By engaging in this pattern of conduct, the court concluded that Respondent not only violated specific ethical rules but also committed serious acts of professional misconduct that undermined the integrity of the legal system. Based upon our independent review of the record, we agree with the Hearing Judge's assessment that Respondent's conduct was prejudicial to the administration of justice in violation of Rule 8.4(d).

## VI.

### SANCTION

The primary purpose of attorney discipline in Maryland is to protect the public, not to punish the attorney. *Attorney Grievance Commission v. Rheinstein*, 466 Md. 648, 720 (2020) (quoting *Attorney Grievance Commission v. Hodes*, 441 Md. 136, 205 (2014)). Sanctions serve this purpose by deterring similar misconduct and by removing attorneys who are unfit to practice law. *Attorney Grievance Commission v. Framm*, 449 Md. 620,

28

665 (2016). In determining the appropriate sanction, this Court considers the nature and severity of the misconduct, the attorney's mental state, the actual or potential harm caused, and any relevant aggravating or mitigating factors. *Attorney Grievance Commission v. Taniform*, 482 Md. 272, 316 (2022).

### *Aggravating and Mitigating Factors*

During an attorney grievance matter, the circuit court may consider the existence of aggravating and mitigating factors. In *Attorney Grievance Commission v. Shuler*, we articulated the following aggravating factors that should be considered in an attorney disciplinary proceeding:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court []; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

443 Md. 494, 506-07 (2015) (alterations in original omitted). Petitioner has the burden of proving aggravating factors by clear and convincing evidence. Md. Rule 19-727(c).

Petitioner alleged the existence of the following aggravating factors, as articulated and numbered by this Court in *Shuler*: (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations; (7) refusal to acknowledge the wrongful nature of the conduct; and (9) substantial experience in the practice of law.

The Hearing Judge found clear and convincing evidence to establish each of the alleged aggravating factors. Respondent displayed a selfish motive since the death of Marion Pisner in 2009 by misappropriating trust funds for his personal expenses. Between February 2009 and July 2010, "when it is undisputed that Respondent was managing the day-to-day activities of the Trust," there was a pattern of misconduct and multiple offenses evidenced by Respondent's repeated misappropriation of trust funds, frivolous litigation and motion practice to prevent the appointment of a successor trustee and, when one was appointed, to prevent that trustee "from gaining access to the Trust records or outright retaliating against Ms. Rubinstein, Mr. McCarthy, and/or Ms. Evans for attempting to enforce valid court orders against Respondent and obtain access to the financial records for the Trust." The consequences of Respondent's actions were severe. Ms. Rubinstein incurred substantial legal fees as a result of Respondent's frivolous litigation and Mr. McCarthy's and Ms. Evans's liability insurance premiums rose. Respondent demonstrated a pattern of misconduct through his multitude of civil suits against Ms. Rubinstein in both state and federal court in both Maryland and the District of Columbia. Respondent repeatedly made frivolous claims in multiple jurisdictions that were not supported by any facts and not sustained by the law. Respondent's misconduct violated Rule 3.1 (Meritorious Claims and Contentions) and Rule 3.4. (Fairness to Opposing Party and Attorney). The Hearing Judge found that the Respondent did not demonstrate any remorse for either his personal use of funds contained in the Pisner Trust or for his frivolous filings.

Finally, the Hearing Judge found that Respondent has substantial experience in the practice of law, having been a member of the Maryland bar since June 14, 1989, and having

30

obtained bar membership in the Commonwealths of Pennsylvania and Virginia and the District of Columbia.

This Court "always consider[s]" mitigating factors "in deciding a disposition in an Attorney Grievance case." *Attorney Grievance Commission v. Coppola*, 419 Md. 370, 401 (2011). In *Hodes*, we provided a list of possible mitigating factors:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

441 Md. at 209 (citation omitted). Respondent has the burden of proving mitigating factors by a preponderance of evidence. Md. Rule 19-727(c).

We find that Respondent established the mitigating factor of absence of prior attorney disciplinary history.

Turning to the sanction, Respondent committed numerous and serious violations of the MARPC, including intentional misappropriation of Trust assets, failure to safeguard client property, frivolous and vexatious litigation, disobedience of court orders, and conduct prejudicial to the administration of justice. These violations, considered both individually and in the aggregate, demonstrate that Respondent is unfit to continue practicing law in this State.

The Hearing Judge found, by clear and convincing evidence, that Respondent used his position as a trustee to exert exclusive control over the Pisner Trust, failed to maintain

31

adequate financial records, and misappropriated Trust assets for personal use. These findings were supported by testimony, accounting records, and judicial inferences drawn by multiple judges who reviewed the matter. Respondent's failure to provide documentation—particularly source records for substantial distributions to himself—violated both his fiduciary duties under trust law and his ethical obligations under Rule 1.15. The misappropriation included the use of Trust funds for personal expenses, including credit card payments, tuition, and legal fees.

We further credit the Hearing Judge's finding that Respondent failed to comply with multiple court orders directing him to produce Pisner Trust documents, resulting in a contempt finding by the circuit court. Respondent admitted under oath that he made no meaningful attempt to retrieve the requested documents and did not undertake reasonable efforts to comply with discovery obligations. This conduct supports a violation of Rule 3.4(c). *See Edwards*, 462 Md. at 704 (holding that failure to comply with court orders constitutes a violation of Rule 3.4(c)).

In addition to his financial misconduct, Respondent engaged in a sustained pattern of litigation conduct that the Hearing Judge concluded was frivolous and intended to obstruct or delay resolution of the underlying trust dispute. Respondent filed actions and appeals in Maryland, the District of Columbia, and federal court, asserting claims that had already been adjudicated or were barred by *res judicata* or collateral estoppel. The Hearing Judge found that Respondent's filings lacked a good faith basis in law or fact and violated Rule 3.1. The record reflects that Respondent did not prevail on a single substantive claim across these proceedings, despite the expenditure of significant judicial

32

and party resources.

We also agree with the Hearing Judge's findings that Respondent's conduct caused tangible harm to multiple parties, including his co-trustee, who incurred substantial legal fees, and two professionals whose liability insurance premiums increased due to the ongoing litigation. Moreover, Respondent's actions taxed judicial resources across multiple forums and delayed resolution of the trust proceedings for more than a decade.

The Hearing Judge identified five aggravating factors supported by the record and one mitigating factor—the absence of prior disciplinary history. In this case, the aggravating factors compel the conclusion that disbarment is warranted. This Court has consistently held that intentional misappropriation of client or fiduciary funds is among the most serious professional violations and typically warrants disbarment. *Woolery*, 462 Md. at 254-55. Likewise, attorneys who persist in vexatious litigation or misuse the judicial process in violation of Rule 3.1 may also face disbarment, particularly when such conduct is compounded by other serious violations. *See Rheinstein*, 466 Md. at 722-23; *Attorney Grievance Commission v. Smith-Scott*, 469 Md. 281, 324 (2020). Respondent's misuse of the legal process did not occur in a single case or over a brief period; rather, it spanned nearly a decade, involved two jurisdictions, and extended across multiple state and federal courts.

Nowhere in his Exceptions did Respondent address what the appropriate sanction should be or explain why his admitted misconduct—use of Trust funds for personal expenses, failure to produce trust records, non-compliance with the October 2, 2017 court order culminating in contempt, and repeated filings barred by *res judicata* or collateral

estoppel—falls outside the scope of sanctionable conduct under the MARPC. As reflected in the Respondent's 70-page Exceptions, and as the Hearing Judge expressly found at the hearing, Respondent neither acknowledged any wrongdoing nor demonstrated remorse at any point during these proceedings. The absence of remorse weighs heavily against mitigation. We have long recognized that a lack of contrition is a significant aggravating factor, for it allays nothing as to "the likelihood of a repetition of the conduct." *Attorney Grievance Commission v. Kovacic*, 389 Md. 233, 240 (2005); *cf. Attorney Grievance Commission v. McClain*, 373 Md. 196, 212 (2003) ("[A]n attorney's voluntary termination of the charged misconduct, when accompanied by an appreciation of the serious impropriety of that past conduct and remorse for it, may be evidence that the attorney will not again engage in such misconduct.").

Although indefinite suspension has been imposed in some cases involving frivolous litigation, those cases did not involve intentional misappropriation of client or fiduciary funds. *See Attorney Grievance Commission v. Whitted*, 487 Md. 501 (2024).[7] Considering the totality of his conduct, the serious harm inflicted, the presence of multiple aggravating factors, and a dearth of mitigating factors, we conclude that disbarment is the only sanction adequate to protect the public and preserve confidence in the profession. Respondent's actions are fundamentally incompatible with the responsibilities of an

---

[7] Unlike the attorney in *Whitted*, who engaged in abusive litigation conduct but did not misuse entrusted funds, Respondent here committed one of the most egregious violations of professional responsibility—knowingly converting trust property for personal use. That fundamental breach of fiduciary duty, when combined with repeated misuse of the courts, compels disbarment.

attorney licensed to practice law in this State.

## VII.

### CONCLUSION

For the reasons discussed above, we concluded in a March 5, 2025 order that Respondent violated Rules of Professional Conduct 1.1 (Competence), 1.15 (Safekeeping Property), 3.1 (Meritorious Claims and Contentions), 3.4 (Fairness to Opposing Party and Attorney), and 8.4(a) and (d) (Misconduct), and ordered that Respondent be disbarred.